EDWARD HOOPER ET AL. V. ABRAM CASTETTER ET AL.

FILED MAY 2, 1895.   No. 5798.

1. **Ruling on Motion to Set Aside Judicial Sale:** REVIEW. In reviewing the action of the district court in refusing to set aside a sale, this court can consider only whether the district court erred in refusing to set aside the sale on the specific grounds assigned for that purpose in the motion filed in the court below.

2. ——: ——. This court cannot, either on appeal or error, say that the district court should or should not have set aside a sale for any reason or irregularity appearing in the record, unless such reason or irregularity was urged upon the district court as a reason for its action. *Smith v. Spaulding*, 40 Neb., 339, *Johnson v. Bemis*, 7 Neb., 224, and *Ecklund v. Willis*, 44 Neb., 129, followed and reaffirmed.

3. **Judicial Sales:** CAVEAT EMPTOR. A purchaser at a mortgage-foreclosure sale will not be relieved from completing his purchase on account of defective title, or on the ground of there being prior incumbrances on the property, when the true condition of the title is fully set out in the pleadings and the record of the proceedings under which the sale was made, as he is chargeable with the notice of such material facts as the record discloses. *Norton v. Nebraska Loan & Trust Co.*, 35 Neb., 466, followed and reaffirmed.

4. ——: DECREE. An officer selling property under execution or a decree in equity can sell such property on such terms, and such terms only, as are provided by the decree and the law in force governing such sale which is incorporated into and a part of such decree.

5. ——: PAYMENT OF BID: SHERIFFS. An officer selling property on execution or under a decree in equity has no authority to sell on credit or to accept in payment of the bid anything

other than lawful money, unless otherwise expressly authorized by the terms of the decree or the law in force governing such sale.

6. ———: ———: ———.   An officer who makes return to an order of sale, issued for the satisfaction of a decree in a mortgage foreclosure proceeding, that he sold the property described in such return to a designated bidder, is conclusively presumed to have made such sale for cash, less the amount of the purchaser's claim, if any, existing against said property and to satisfy which such sale was made, unless the decree on which said order of sale is based expressly authorizes a sale on credit.

7. ———: ———: RIGHTS OF PURCHASER: WAIVER OF ERRORS. A purchaser of property sold at judicial sale, who, after its confirmation, accepts a conveyance for said property executed in pursuance of such sale, its confirmation, and the order of the court, and who applies to and obtains from the court an order for a writ of possession for such property, thereby waives all errors and irregularities which occurred in the making of such sale and all objections and exceptions to the court's order of confirmation.

8. Review: TRIAL TO COURT: CONFLICTING EVIDENCE. The finding of a district court made on conflicting evidence, like the finding of a jury, is binding on this court if such finding is supported by sufficient evidence.

9. Mortgages: JUDICIAL SALES: DISTRIBUTION OF PROCEEDS. Certain real estate was incumbered by two mortgages. The holder of the second mortgage brought a suit in equity to foreclose, obtained a decree, and at a sale thereunder purchased the property. The holder of the first mortgage was not made a party to the foreclosure suit. After obtaining his decree, but before the sale, the holder of the second mortgage purchased and took an assignment to himself of the first mortgage. *Held*, That his ownership of the first mortgage did not of itself entitle him as against the mortgagor to a decree applying the surplus proceeds of the sale towards the liquidation of the mortgage purchased.

10. ———: DECREE OF FORECLOSURE: LIEN OF JUDGMENTS: HOMESTEAD: PROCEDURE IN ASSERTING RIGHTS: DISTRIBUTION OF PROCEEDS OF SALE.   In a suit to foreclose a real estate mortgage, certain creditors of the mortgagor having ordinary judgments, apparent liens on the mortgaged property, were made parties defendant.   They filed answers asking that their judgments might be paid out of any surplus arising from the sale of the property and remaining after satisfaction of the mortgage

Hooper v. Castetter.

being foreclosed, and the decree rendered so provided. The mortgagor, though personally served, did not appear in the case until after a sale of the mortgaged property, when he applied to the court for an order to have $2,000 of the surplus paid to him in lieu of his homestead exemption. *Held*, (1) That the mortgagor was entitled to the order; (2) that the question of the homestead rights of the mortgagor was not involved nor litigated in the foreclosure suit; (3) that the decree rendered in the foreclosure suit was not a bar to the mortgagor's application to have the surplus paid to him in lieu of his homestead; (4) that though the judgments were liens upon the real estate before the bringing of the foreclosure suit, such liens were subject to the mortgagor's homestead rights in the property; (5) that the decree in the foreclosure suit finding the judgments were liens, and ordering them paid out of the surplus, should be construed as if it read, that they were liens and should be paid out of the surplus, subject to the mortgagor's homestead rights; (6) that the mortgagor did not lose his homestead exemption because the real estate had been converted by a decree of court into money, nor did the judgment creditors acquire by the decree any greater liens upon or right to the money than they had against the property; (7) that the mortgagor might claim the surplus money in lieu of his homestead exemption at any time before such surplus was finally distributed by order of the court.

ERROR from the district court of Washington county. Tried below before SCOTT, J.

See opinion for statement of the case.

*Charles Offutt*, for Abram Castetter:

The order of confirmation is erroneous, because no copy of the appraisement was deposited with the clerk of the district court. (*McKeighan v. Hopkins*, 14 Neb., 367; *Jones v. Mill*, 9 Neb., 254.)

The failure of the appraisers to deduct and enumerate prior incumbrances made the order of confirmation erroneous. (*Sessions v. Irwin*, 8 Neb., 5.)

The order of confirmation was erroneous, because Castetter's bid was not absolute, but was expressly conditioned upon the application of the mortgage for four thousand five

hundred dollars as part of the purchase price. (*Morrill v. Davis*, 27 Neb., 775; *Hurt v. Stull*, 4 Md. Ch., 391; *Armor v. Cochrane*, 66 Pa. St., 308; *Bozza v. Rowe*, 30 Ill., 198.)

Had the bid made for Castetter been unconditional it would not have bound him. (*Brown v. Johnson*, 51 Am. Dec. [Miss.], 118.)

The order of confirmation was also erroneous, because the bid was induced by the false representations and subsequently violated promises of the judgment debtor. (*Paulett v. Peabody*, 3 Neb., 196; *Frasher v. Ingham*, 4 Neb., 531; *Webster v. Haworth*, 8 Cal., 21; *Masson v. Bovet*, 1 Den. [N. Y.], 69; *Stevens v. McNamara*, 58 Am. Dec. [Me.], 740; *Spragg v. Shriver*, 64 Am. Dec. [Pa.], 698; *Ray v. Virgin*, 12 Ill., 216; *O'Kelley v. Gholston*, 15 S. E. Rep. [Ga.], 123; *Vannice v. Greene*, 16 Ia., 574; *Evans v. McGlasson*, 18 Ia., 150; *Butterfield v. Walsh*, 21 Ia., 97; *Wood v. Chopin*, 3 Kern. [N. Y.], 509.)

As to the question of distribution the following cases were cited: *Adams v. Angell*, L. R. 5, Ch. Div. [Eng.], 634; *Bullard v. Leach*, 27 Vt., 495; *Smith v. Swan*, 69 Ia., 412; *Pyke v. Gleason*, 60 Ia., 150; *Rector v. Rotton*, 3 Neb., 171; *Jackson v. Creighton*, 29 Neb., 310.

*L. W. Osborn*, for judgment creditors:

A decree foreclosing a mortgage is none the less final because subsequent proceedings under the direction of the court may be necessary to execute the decree. (*Bronson v. La Crosse & M. R. Co.*, 2 Black [U. S.], 531; *Ray v. Law*, 3 Cranch [U. S.], 179.)

The decree was conclusive. Nothing further was to be done except to make the sale and distribute the proceeds as directed by the decree. (Jones, Mortgages, secs. 1587, 1588; Freeman, Judgments, sec. 303, and cases cited.)

The Remingtons failed to assert their rights before the decree was entered and are concluded by it. (Freeman, Judgments, secs. 246–249.)

As to homestead rights and waiver thereof the following authorities were cited: Jones, Mortgages, sec. 1632; *Chapman v. Lester,* 12 Kan., 592; *Searle v. Chapman,* 121 Mass., 19; *White v. Polleys,* 20 Wis., 504.

*Jesse T. Davis, E. R. Duffie,* and *Francis A. Brogan,* contra.

RAGAN, C.

Abram Castetter brought this suit in equity in the district court of Washington county against O. N. Remington and wife and a number of other persons, hereinafter designated "judgment creditors." The object of the action was to foreclose certain mortgages belonging to Castetter which had been executed and delivered to him by Remington and wife on certain real estate in said county. At the time the suit was brought the Scottish-American Investment Company held a mortgage upon this real estate for $4,500. This mortgage had been executed by Remington and wife and was a first lien upon all the real estate involved in this action. No reference was made to this mortgage in any of the pleadings filed in this case, and the Scottish-American Company, the holder of the mortgage, was not made a party to the action. Remington and wife, though personally served with summons, made no appearance in the action. The judgment creditors appeared and filed answers, setting out certain judgments which they held against Remington, and asked that in case of a sale of the mortgaged premises under Castetter's mortgages, and after the satisfaction of such mortgages, that the surplus proceeds of the sale might be applied towards the satisfaction of their judgments. By the decree pronounced in the case the district court found the amount due Castetter on his mortgages made by Remington and the amount due each of the judgment creditors from Remington, but that the liens of Castetter and of the judgment creditors were each subject to the $4,500

mortgage held by the Scottish-American Investment Company as above stated. Aside from this mortgage Castetter's debt was declared to be the first lien upon the premises. The judgment creditors were declared to have liens upon the premises, subject to Castetter's, in the order of the date of the filing in the office of the clerk of the district court of said county of their judgments. The decree further provided for a sale of the mortgaged premises and the bringing of the proceeds into court to be applied to the liquidation of the amounts found due Castetter and the judgment creditors. The issuance of an order for the satisfaction of the decree was, at the request of Remington, stayed for nine months in pursuance of the statute. On the 28th of January, 1892, the order of sale was issued, and on the 7th of March, 1892, the sheriff returned said order of sale into court, reciting that he had on the 4th day of March, 1892, sold all the real estate described in the decree at public auction to Abram Castetter, the plaintiff in the action, for $11,200. On the 9th of March, 1892, Castetter filed a motion to set aside the sale made by the sheriff, the only ground of this motion being "that the bid at said sale was made by this plaintiff under a total misapprehension of facts, as shown by affidavits filed in support of this motion." On the 27th of September, 1892, the court overruled the motion of Castetter to set aside the sale and confirmed it. To this ruling of the court Castetter took no exception, but at the same time made application for and obtained from the court an order for a writ of possession of the premises. After the rendition of said decree, but before the sale thereunder, Castetter purchased of the Scottish-American Investment Company its $4,500 mortgage, took an assignment of the same, and owned and held said mortgage and the debt it secured at the date of the judicial sale. On the same day that the court overruled Castetter's motion to set aside this sale he filed in the case an application reciting the existence of this Scottish-

American Investment Company's mortgage as a first lien upon the premises at the time of the bringing of the suit, and that at the request of Remington he had purchased and taken an assignment of said mortgage after the rendition of the decree and before the sale herein; that he had made the purchase of said mortgage under an agreement with Remington that the amount due on said mortgage should be applied by him on whatever bid he might make for said mortgaged property at the sale thereof; and he prayed the court to order that after the amount found due him from Remington by the decree, with interest and costs, had been satisfied, the surplus proceeds arising from the sale of said property might be applied to the liquidation of the Scottish-American Company mortgage. This application the court denied. The judgment creditors also made application to the court for an order directing that whatever remained of the $11,200, after paying the costs of the suit and the amount found due Castetter by the decree, should be applied towards the payment of the amounts found due them on their judgments against Remington. This order the court refused, and on the application of Remington and wife ordered the amount found due Castetter by the decree, with interest and costs of the action, to be first paid out of the bid of $11,200, and that out of the surplus there should be paid to Remington and wife $2,000 in lieu of a homestead, and if any surplus then remained it should be distributed to the judgment creditors. Castetter has prosecuted to this court a petition in error to reverse the order of the district court overruling his motion to set aside the sale, and to reverse the order of the court overruling his application to have the surplus proceeds of the sale applied to a liquidation of the Scottish-American Company mortgage. The judgment creditors have prosecuted to this court a joint petition in error to reverse the order of the court postponing the payment of their judgments out of the surplus proceeds of the sale to the home-

stead claims of Remington and wife. We will first dispose of the petition in error of Castetter.

1. The order of the district court overruling Castetter's motion to set aside the sale: Counsel in his argument here alleges various irregularities as reasons why the court should have sustained Castetter's motion to set aside the sale. It is said that no copy of the appraisement of the property was deposited with the clerk of the court before the property was advertised and sold; that the appraisers failed to deduct and enumerate incumbrances upon the property which were prior to those for which the property was sold; that Castetter's bid was not absolute, but was a conditional bid; that he was not himself present at the sale, but the bid was made in his behalf by his agent and that this agent violated his instructions. As already seen, the only ground alleged by Castetter in his motion for setting aside this sale was that the bid made by him had been made under a misapprehension of facts. In *Johnson v. Bemis*, 7 Neb., 224, it was held: "A motion to set aside a sale, or order confirming a sale of real estate, should point out specifically the errors complained of. General objections are too indefinite to be considered." And in *Ecklund v. Willis*, 44 Neb., 129, it was held: "Objections to the confirmation of a sale of real estate must be specifically assigned in the motion filed in the lower court to vacate the sale, or they will be unavailing." In reviewing the action of the district court in refusing to set aside a sale this court can consider only whether the district court erred in refusing to set aside the sale on the specific grounds assigned for that purpose in the motion filed in the court below. We cannot on error or appeal say that the district court should or should not have set aside a sale for any reason or irregularity appearing in the record unless such reason or irregularity was urged upon the district court as a reason for this action. (*Smith v. Spaulding*, 40 Neb., 339.) Therefore, in the case under consideration,

in determining whether the court erred in refusing to set
aside this sale, our inquiry must be limited to the correct-
ness of the conclusion of the district court that the bid
made by Castetter was made under a misapprehension of
the facts.   The evidence to this point on behalf of Castet-
ter tends to show that he purchased the Scottish-American
mortgage before the sale at the request of Remington and
under an agreement with him that the amount due on this
mortgage should be paid instead of money to satisfy the
bid which Castetter might make for the mortgaged prem-
ises, and that Castetter, at the time of the sale, understood
and believed that the Scottish-American mortgage was in-
cluded in the decree; that whatever was bid at the sale for
the property would have to be applied to the discharge of
that mortgage, and that Remington concealed from him,
Castetter, the fact that the Scottish-American mortgage was
not foreclosed in this decree.   On the other hand, Reming-
ton positively and unequivocally denies that he ever re-
quested or induced Castetter to purchase the Scottish-Amer-
ican mortgage, or knew that he had done so prior to the
sale.   The evidence in the bill of exceptions is not such
as enables us to say that the finding of the district court in
favor of Remington, that he did not request or induce
Castetter to purchase this Scottish-American mortgage,
and that he did not conceal from Castetter the fact that
this mortgage was not embraced in the decree, is unsup-
ported by sufficient evidence; and if, for the purposes
of this case, we assume that Castetter, at the time he
made the bid, was under the impression or belief that the
proceeds of such bid would have to be first applied to the
payment of the Scottish-American mortgage, we are still
unable to say how such a misapprehension could avail Cas-
tetter here.   He was the plaintiff in this action, and it
must be presumed that he knew the averments of his peti-
tion and for what relief he prayed therein, and it must
also be presumed that he knew the terms of the decree.

Whatever may be the rule elsewhere, the doctrine of this court is that the rule of *caveat emptor* applies to a purchaser of real estate at a judicial sale thereof; that he is bound to examine the title which he is about to purchase; that he cannot even rely upon statements made by the officer conducting the sale as to the condition of the title; and if he buys without such examination, he does so at his peril and must suffer for his neglect. See *Norton v. Nebraska Loan & Trust Co.*, 35 Neb., 466, where it was held: "A purchaser at a mortgage foreclosure sale will not be relieved from completing his purchase on account of defective title, or on the ground of there being prior incumbrances on the property, when the true condition of the title is fully set out in the pleadings and the record of the proceedings under which the sale was made, as he is chargeable with notice of such material facts as the records disclose." This case was again before the court in 40 Neb., 394, and reaffirmed. Again, if we assume that Castetter's contention is true, that he purchased the Scottish-American mortgage at the request of Remington, and that he was induced to make the bid he did because of an agreement with Remington that the amount due on such mortgage should be applied in satisfaction of such bid instead of paying money, we would still be unable to say that the district court was wrong in refusing to set aside the sale for that reason. Section 854 of the Code of Civil Procedure provides: "The proceeds of every sale made under a decree in chancery shall be applied to the discharge of the debt adjudged by such court to be due, and of the costs awarded, and if there be any surplus it shall be brought into court for the use of the defendant, or of the person entitled thereto, subject to the order of the court." An officer selling property under execution or a decree in equity can sell such property on such terms, and such terms only, as are provided by the decree and the law in force governing such sale, which is

incorporated into and a part of such decree. In other words, an officer selling property on execution or under a decree in equity has no authority to sell on credit unless by the express terms of the decree or by the statute he is so authorized. (Freeman, Executions, sec. 300; *Swope v. Ardery*, 5 Ind., 213.) In the case at bar the officer was directed to sell at public auction to the highest bidder the real estate described in the decree, and he was authorized to sell it, and sell it only for cash, but by reason of the statute and by reason of the fact that Castetter had been given a lien against the real estate sold and for which it was sold, the officer was authorized to accept from Castetter the amount of this decree as money. Therefore, if it was the agreement between Remington and Castetter that the latter should turn in to the sheriff the Scottish-American mortgage as a part of the $11,200 bid by Castetter for the premises, the sheriff would have had no authority to accept such mortgage in lieu of money and having made a return into court that he had sold this property to Castetter for $11,200, he is conclusively presumed to have collected this money from Castetter, less the amount of Castetter's decree against the property. The officer could not be heard in this or any other proceeding to say that he accepted from Castetter for the excess of the bid over and above his decree any-. thing other than money. After the court had overruled the motion of Castetter to set aside this sale, he applied to and obtained from the court an order for a writ putting him in possession of the premises. The evidence also shows that the sheriff executed and delivered to Castetter, or his agent, a deed for these premises. Castetter, or his agent, paid the fee for recording this deed, and, it would seem, took possession of the premises. At least Castetter listed these lands with a real estate agent for sale. Here, then, was a waiver by Castetter of all errors and irregularities, if any there were, which occurred in the making of this sale, and a waiver of all objections and exceptions to

the order of the court in confirming it. For the foregoing reasons we conclude that the district court did not err in overruling the motion of Castetter to set aside the sale and in confirming the same.

2. Did the court err in refusing to apply the excess of Castetter's bid remaining, after discharging the amount found due him by the decree and the costs of the case, towards the liquidation of the Scottish-American mortgage? As already stated, this application of the surplus was asked by Castetter on the grounds that he had advanced the money, purchased and taken an assignment of this Scottish-American mortgage, at the request of Remington and under an agreement with him that he should turn in this mortgage and apply it on whatever bid he might make upon the land at the foreclosure sale instead of so much money. The evidence in the record in behalf of Castetter tends to support his contention. Castetter and his agent and others testify that this was the agreement and understanding with Remington. The evidence also tends to show that Castetter bid for this land more than it was worth because of this agreement. On the other hand Remington positively swears that he never requested or induced Castetter to purchase this Scottish-American mortgage, and that he did not know he had purchased it until after the sale; that he never had any agreement with Castetter by which the latter was to apply this mortgage on any bid he might make at a sale of the property. The appraisement made of the land under the direction of the sheriff holding the order of sale shows that the land was appraised at $40 per acre, the amount bid for it by Castetter. The evidence also discloses that at the sale there was some competition. That a man named Shields bid $30 per acre for the property, that Castetter then bid $35 per acre, and that Shields then bid $37.50 per acre, whereupon Castetter bid $40 per acre for the property and it was struck off to him at that price. The finding of a district court, made on conflicting

evidence, like the finding of a jury, is binding upon this court if such finding is supported by sufficient evidence. Had we been trying this question of fact it may be that we would have reached a different conclusion from that reached by the learned district judge, but that consideration does not authorize us to say that the district court came to the incorrect conclusion. We do not feel at liberty to disturb this finding, as there is sufficient evidence in the record to sustain it. If, then, Castetter took an assignment of this mortgage without the solicitation of Remington, without his knowledge, and without any agreement on the part of Remington that the mortgage should be applied upon whatever bid Castetter might make upon the land, it would be inequitable to apply the surplus in the hands of the sheriff arising from the sale made towards the liquidation of that mortgage. Counsel for Castetter seems to be of opinion that the district court denied his client's application to apply the surplus from the sale on the Scottish-American mortgage on the ground that when Castetter purchased the premises at the foreclosure sale that his lien upon the premises acquired by virtue of his purchase of the Scottish-American mortgage was merged in the title acquired at the foreclosure sale. We do not think that the district court denied the application of counsel's client on this ground; nor do we think that it necessarily follows that the mortgage purchased by Castetter from the Scottish-American Company was extinguished or merged by Castetter's purchase of the premises. Whether the mortgage was extinguished or merged by Castetter's purchase was a matter which rested in his volition. If he desired to keep the mortgage alive upon the premises, and at the same time hold the legal title to the premises, we know of no principle of law which prevented it; nor do we perceive how that question could have been material or have influenced the court in the consideration of the application made by Castetter to apply the surplus bid to the extinguishment of

such mortgage. Keeping in view the finding of fact made
by the district court, Castetter has no more right to have
the surplus proceeds of the sale applied to the liquidation
of the Scottish-American mortgage than would a stranger
to the proceedings have, had such stranger purchased this
Scottish-American mortgage and taken an assignment of it
after a decree rendered against the Remingtons and in
favor of Castetter; and it will scarcely be contended that
had a stranger purchased this mortgage at the time Castet-
ter did that his ownership of the mortgage would have en-
titled him to have the surplus proceeds arising from the
foreclosure sale applied to its discharge; or that the Scot-
tish-American Mortgage Company would have such right.

3. Petition in error of the judgment creditors. As al-
ready stated, certain persons whom we have designated
judgment creditors were made defendants to the foreclosure
suit brought by Castetter. These parties, and each of
them, had ordinary money judgments against Remington.
They filed their answers in the action, setting out their
judgments and asking that the judgments be paid out of
whatever surplus there might be in the hands of the officer
after a sale of the property and a payment of Castetter's
liens; and the district court, by its decree, found what was
due to each of the judgment creditors from Remington;
that the amount found due was a lien upon the real estate;
ordered the property sold and the proceeds brought into
court to be applied in satisfaction of the sums found due
Castetter and the judgment creditors. Neither Reming-
ton nor his wife appeared in the action, and a decree was
rendered against them by default. After the premises had
been sold at a foreclosure sale, after the costs and expenses of
the suit and the amount found due Castetter had been paid,
the judgment creditors claimed the surplus remaining should
be applied upon their judgments against Remington. On
the other hand, Remington and his wife at that time filed an
application to have $2,000 of the surplus paid to them in

lieu of their homestead.   The court directed $2,000 of the surplus to be paid to the Remingtons in lieu of their homestead; and it is to reverse this order that the judgment creditors have filed here their petition in error.   The argument is that the Remingtons are concluded and estopped by the decree in the foreclosure suit which found that the amounts due to them from Remington were liens upon the real estate. Without going into any extended discussion, we are satisfied that the contention must be overruled.   The judgments of the judgment creditors were liens upon this real estate before the bringing of the foreclosure suit; but while they were liens upon the real estate, the lien was subject to the homestead rights of the Remingtons.   The fact that they set up their judgments in their answers filed in the foreclosure suit, and that the court found that they were liens upon the real estate, added nothing whatever to the character of these judgment liens.   The decree must be construed as if read : The judgments are liens upon and to be paid out of the surplus, subject to the homestead rights of the Remingtons.   The question of the right of the Remingtons to hold a part of the land as a homestead was not involved in, nor litigated in, the foreclosure suit; and that decree constitutes no bar to their application to have the surplus paid to them in lieu of their homestead. (*Mooers v. Dixon*, 35 Ill., 208 ; *Wing v. Cropper*, 35 Ill., 256 ; *Hoskins v. Litchfield*, 31 Ill., 137 ; *Moore v. Titman*, 33 Ill., 358 ; *Sears v. Hanks*, 14 O. St., 298.) At no time could the judgment creditors have sold the homestead of the Remingtons for the satisfaction of their judgment; but since the homestead was pledged for the payment of the Castetter mortgage, the court had authority to decree that it be sold for that purpose.   But if the sheriff could have satisfied the Castetter mortgage by a sale of a portion of the premises, it would have been his duty, and doubtless he would have done so; and had a portion of the land occupied by the Remingtons of the value of

10

$2,000 remained unsold, the judgment creditors would have had no authority to have such portion of land sold for the satisfaction of their judgments. The Remingtons did not lose their exemption because the property had been converted by a decree of the court into money, nor did the judgment creditors acquire any greater liens upon or right to this money than they had to or against the property. The Remingtons had a right to claim this surplus money in lieu of their homestead exemption at any time before it was finally distributed. The decree of the district court is in all things

AFFIRMED.