**FIRST NAT. BANK OF CONNELLSVILLE v. BRENNAN et al.**

**In re SHIPLEY COAL CO.**

Circuit Court of Appeals, Third Circuit. March 22, 1927.

No. 3610.

**Bankruptcy ⚖═263—Sale of property of bankrupt at public sale to mortgage trustee for bondholders held not invalid because bankruptcy trustee was small bondholder.**

All the property of bankrupt, a coal-mining company, was mortgaged to a trustee to secure $95,000 of bonds. Bankrupt had ceased operating the mine, and the property was clearly not worth the mortgage debt, and there was no equity therein for general creditors. The trustee elected was holder of $6,000 of the mortgage bonds. Under direction of the court he sold the property at public sale, and it was purchased, in competitive bidding, by the mortgage trustee for $70,000. *Held*, that the sale was not invalidated by the fact that the

bankruptcy trustee, as a bondholder, had a small interest in the purchase.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Robert M. Gibson, Judge.

In the matter of the Shipley Coal Company, bankrupt; George K. Brennan, trustee. The First National Bank of Connellsville appeals from an order confirming sale of property by trustee. Order affirmed.

Sterling, Higbee & Matthews, of Uniontown, Pa. (E. C. Higbee, of Uniontown, Pa., of counsel), for appellant.

John J. Kennedy, of Pittsburgh, Pa., and W. Curtis Truxal, of Somerset, Pa., for appellee Brennan.

J. Clark Stewart, of Pittsburgh, Pa., and Andrew F. Quinn, Jr., of Philadelphia, Pa., for appellee Scottdale Co.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In substance, this case concerns a mortgage given by the Shipley Coal Company, now in bankruptcy, to the Scottdale Savings & Trust Company, trustee for bondholders. Prior to the bankruptcy the coal company stopped operations, defaulted its mortgage, and the trust company took possession of the lands, mines, railroad, etc., covered thereby, and, as the coal company had neither then nor since any other assets, the trust company has since employed a watchman and been at the other expenses incident to the care and preservation of the property, for all of which outlay, in addition to its own compensation for services, it must be reimbursed before the mortgage could be satisfied. In addition thereto, and the referee so finds, to put the mine in working shape, an expenditure by a purchaser to the amount of over $20,000 for repairs, replacements, rentals, and taxes must be provided for. Subsequent to the trust company taking possession of the idle mine, the coal company went into bankruptcy; the lien creditors being the bondholders, and the general creditors being 12 to 14 banks, of which the present exceptant was one.

Subsequently, George K. Brennan, an experienced coal operator, who owned $6,000 of the outstanding $95,000 bonds, was elected trustee. Against his competency, fairness, and integrity in the performance of his duty there is not alone an absence of challenge, but there is an affirmance of proof which satisfied both referee and court in that regard. Moreover, it is quite clear that, in view of the indebtedness on the mortgage, the outstanding charges incurred by the trust company in preserving the property, the outlay the purchaser would have to make to operate the mine, and the payment of the expenses of bankrupt sale and administration, that there was no equity in the property for the bankrupt estate or the general creditors. The fact that this latter class was made up of banks, that none of them, including the exceptant, took any steps to purchase the property or to enter into competitive bidding for it, and that none of them, including the exceptant, now tenders or even asserts any price could be obtained in excess of the mortgage, satisfied us that there is no equity in the property for the general creditors, and that the only practical problem below was a question of making title; that is, by the trustee foreclosing in a state court or the trustee making title in the bankrupt court. With a view to the latter course being followed, the trust company qualified as a bidder, with leave to pay in bonds, and the record discloses no objection made thereto by the exceptant or any of the creditors of the propriety of its so qualifying. We here remark that such step by the trust company was one which it was bound to take for the protection of the $89,000 bondholders, other than Brennan's $6,000, whom it represented.

The sale was fully advertised; the trustee tried to secure outside purchasers; a considerable number of coal operators were present; the exceptant was represented; the referee attended the sale, and, after bidding of other persons, the property was sold free and clear of liens to the trust company for $70,000. We are satisfied, as was the court below and the referee, that under all the circumstances the price was the best that could be obtained, and that then and since no price could be obtained which would net anything to the general creditors. Objection is now made by one bank that Brennan, the trustee, was a purchaser at his own sale, and that such a sale is against the policy of the law and cannot be sustained. We have no purpose or wish in any way to minimize or weaken this vitally essential principle of legal administration, but we regard this as really not a case to which it applies.

The real purchaser here is not Brennan, the holder of $6,000 of these bonds, but the trust company, which represents $89,000 of these bonds, besides Brennan. In electing to purchase or not to purchase for the protection of its cestuis que trustent, the trust company is acting solely in the line of its performance

of duty in behalf of all the bondholders and not for Brennan alone. Indeed it may very well be the present view of Brennan, or the outcome may prove, that it would have been more to Brennan's interest had the trust company not have bought, and had Brennan participated in prorating in the proceeds of the next lower bid, rather than in making a purchaser in his behalf, in which he and his fellow bondholders may hereafter have to incur further large outlays to make the purchase of any value. We think that, all things considered, in view of Brennan's interest being so relatively small as not to affect him in the minds of the general creditors, when they chose him as trustee, of his relatively small bond ownership, of his inability to determine whether to purchase with bonds or to participate in purchase money, we are justified in holding that Brennan is in reality not a purchaser at his own sale, and that the small relative interest he had neither did nor could affect the sale to the trustee and taint its legality.

We therefore affirm the decree of the court confirming the sale, and, as the case is one where deterioration of the mine is daily going on, we direct that the mandate issue to the court below on the tenth day after the filing of this opinion.