## In re RENNE.

### No. 3317.

District Court, D. Nebraska, Lincoln Division.

July 5, 1944.

M. O. Cunningham, of Omaha, Neb., for debtor.

Joseph A. Vojir and Wm. W. Graham, both of Omaha, Neb., for secured creditor and purchaser, Katolicky Delnik (Catholic Workman).

DELEHANT, District Judge.

This case is now before the court upon the report of sale and petition to confirm, filed herein by Daniel H. McClenahan, trustee, under date of May 10, 1944 (filing 113); the petition for confirmation of sale, filed by the secured creditor, and purchaser at the trustee's sale, Katolicky Delnik, on May 15, 1944 (filing 114); the court's order to show cause, made and given on May 15, 1944 (filing 115); and the debtor's showing against confirmation, filed May 24, 1944 (filing 117).

There has been no curtailment or termination, for any reason, of the stay of judicial or other official proceedings in this matter. On the contrary, it has run its extreme statutory course. The proceeding was filed on April 12, 1940. Conciliation failing, amended petition was filed, and order of adjudication and reference was entered on June 7, 1940. The steps preliminary to stay (including a valid initial appraisal of real estate on June 27, 1940, at $13,800) were protracted, but were completed by November 1, 1940, on which date the court, by Judge Munger, signed the order staying proceedings for three years, which, however, was not filed until November 7, 1940. Thus, the statutory three-year stay of proceedings, judicially allowed, expired not later than November 7, 1943. Many controversies intervened, in the

870

course of which the debtor was adjudged to be, and yet remains, in default in the payment of rentals under the court's effective rental orders. Finally, on October 30, 1943, the debtor filed a written request for reappraisal of his real estate, presumably in contemplation of a proposed redemption. Although he was then substantially in default in respect of his rental payments, the court allowed his request; and in the exercise of the discretion committed to it, set the cause for formal hearing on the issue of the valuation of the real estate. The hearing, after several continuances to accommodate counsel for one or both of the parties, was held in open court on December 3, 1943, upon the issue of the value of the real estate as well as upon other pending issues and, briefs having meanwhile been presented upon the right of the debtor to redeem in view of his then existing default in rental payments, on December 28, 1943, the court filed a memorandum and findings of fact, conclusions of law, and judgment, fixing the then fair market value of the real estate at twenty-one thousand six hundred ($21,600) dollars, and allowing the debtor until midnight February 1, 1944, as an additional period for redemption of the real estate at that valuation. (See filings 82 and 83.) Redemption having been neither made nor tendered, the secured creditor, on February 10, 1944, filed its petition for the appointment of a trustee and for public sale of the real estate. Order to show cause and for hearing thereon before the supervising conciliation commissioner was entered on February 16, 1944, and thereafter duly served. The commissioner held the hearing on March 3, 1944, as directed in the order, and on March 6, 1944, filed his report and recommendations; and therein, over objection in writing filed by the debtor, recommended the allowance of the secured creditor's petition for appointment of trustee and the direction of public sale of the real estate. The debtor promptly filed an objection to the report in the form of an answer to it, and on March 20, 1944, the court set the case for hearing on March 31, 1944, upon sundry then pending issues, including the report and recommendations of the supervising conciliation commissioner, and all matters embraced therein and the pleadings underlying it, and the debtor's answer to it. The hearing was had on the day scheduled, on which date also the court confirmed the report and recommendations, sustained

the secured creditor's petition for public sale, subject to the debtor's statutory right to redeem therefrom, appointed Mr. McClenahan as trustee to make the sale, prescribed his bond, and directed that the sale be held at the North front door of the Court House in Nebraska City, in Otoe County, Nebraska, where the real estate is situated; that notice be published in a legal newspaper in that county for thirty days prior to the sale; that the real estate be sold free and clear of all encumbrance; and that, after the sale, the trustee forthwith file his report in this court. The trustee filed formal acceptance of his trust, gave bond, which the court approved, fixed the time of sale as May 9, 1944, at eleven o'clock in the forenoon; caused notice thereof to be published for more than thirty days next prior to the date of sale in the Nebraska Daily News-Press, a legal newspaper published at Nebraska City, Nebraska; held the sale at the place designated by the court's order and on the date and at the hour fixed by the trustee and specified in the notice, at which sale the real estate was sold to the secured creditor for twenty-three thousand five hundred ($23,500) dollars which is slightly less than the amount of its lien with interest to date of sale and the costs of the sale; and on May 10, 1944 (filing 113), made detailed report to the court of his proceedings as trustee and of his sale. Concluding his report, the trustee prayed, inter alia, for confirmation of the sale and for direction to him as trustee to execute a trustee's deed of conveyance of the real estate to the purchaser, unless within ninety days from May 9, 1944, the date of sale, the debtor should redeem the real estate by the payment into court of the purchase price of twenty-three thousand five hundred ($23,500) dollars with interest at the rate of five per cent per annum from the date of sale to the date of such redemption. The other filings and pleadings upon which the issue is now made, ensued. At no point in the proceedings has any appeal been prosecuted to the Circuit Court of Appeals. The mortgage of the secured creditor was made in 1926.

The foregoing case history has been set down, to the end that it may clearly appear that the debtor has been accorded every indulgence, redemption right, and procedural advantage which may possibly be granted him under Title 11 U.S.C.A. § 203, however liberally it may be construed and applied in his favor, even in the

face of his own persistent delinquency in the payment of rentals due from him under the statutes and the court's orders.

It may be noted that the debtor's showing against confirmation was wholly unsupported at the hearing on confirmation by any evidence, notwithstanding the fact that the court invited the introduction of evidence before proceeding to the hearing. Therefore, allegations of fact outside the record, made in his showing must be regarded as unproved. This comment applies to his assertion in his showing that at the public sale, and before any bid was made by the secured creditor, one D. P. West offered to bid fifteen thousand ($15,000) dollars, promptly upon which the secured creditor made a bid of twenty-two thousand five hundred ($22,500) dollars, which it increased before completion of the sale to twenty-three thousand five hundred ($23,500) dollars. This statement is wholly unestablished. But if it were true, it would have no significance. The duty of the trustee was to obtain the highest available bid for the property; and this he clearly did, even under the debtor's factual theory.

Neither is there any proof of the debtor's assertion in his showing that the secured creditor's bid was "upon credit", by which he evidently means that it was tendered with a reservation, or on condition, that, to the extent of the amount of the sale price applicable on its first lien, after the payment of the costs of the sale, credit on its bid should be allowed the purchaser because of its lien. The inference of any such express reservation or condition is repelled by the language of the trustee's report of sale, which in all particulars is a report in form as upon a sale for cash. The report explicitly recommends the distribution, by the court's further order, of the whole proceeds of sale, (a) to the payment of the costs of sale fully itemized, two hundred thirty one and 57/100 ($231.57) dollars, (b) to the secured creditor in application upon its lien, the residue of twenty-three thousand two hundred sixty-eight and 43/100 ($23,268.43) dollars, which is slightly less than the amount due at the time of the sale on the lien. Not as a condition of the bid, but solely as his own administrative recommendation to the court, the trustee states in his report: "In the opinion of this trustee, the purchaser, being the holder of the superior lien on said described real estate, and furnishing a receipt to this trustee for the payment on its first lien, that the purchaser should be given credit for the amounts due on said mortgage lien of the amount that would otherwise accrue to them by reason of said lien, and not be required to pay into this court the amount of money so bid that must be repaid to said mortgage lienholder." Manifestly, the "receipt to this trustee" above mentioned refers to a proposed receipt to be given if the trustee's recommendation be adopted by the court, for no such receipt is said yet to have been given. Nor does any receipt accompany the very complete and detailed Report of the trustee. But if one were already given it could, in any event, be only tentative and subject to the court's ruling.

Upon that record, unimpeached by any evidence whatsoever, the court finds and considers that the purchaser's bid is an unconditioned one, under which it is obliged to deliver the full amount of the bid in cash to the trustee, unless, in its order of confirmation, the court shall direct that it be allowed to apply on the bid by way of credit, the amount thereof distributable to it as secured creditor. Without the unnecessary citation of authorities it may be added that such, in legal effect, is the consequence of the purchaser's bid. In the absence of provision to the contrary in the court's order for sale, the trustee's sale is for cash, and the buyer's bid is for cash, obligating it, except by the court's absolution, to pay in cash the full amount bid and accept the hazard of not receiving payment on its lien.

Stripped down to its real contention, the debtor's only objection, on which he stands, is that, in the absence of express permission to the secured creditor to bid, contained in the order for sale, the secured creditor is not an eligible bidder; and that, in the absence of like permission to it to take credit on its bid for the amount thereof applicable on its lien, it is not entitled to take such credit. The court considers the objection to be entirely without legal foundation.

This court is persuaded that with specific reference to sales under Title 11 U.S.C.A. § 203, sub. s(3) (irrespective of the usage and practice in bankruptcy generally), the absolute right of a lienholding creditor to bid at a trustee's sale has been affirmed beyond question by the Supreme Court of the United States in Wright v. Vinton Branch, 300 U.S. 440, 456, 457, 458, 459, 460, 57 S.Ct. 556, 81 L.Ed. 736,

872

112 A.L.R. 1455, especially when it is examined in the light of Louisville Bank v. Radford, 295 U.S. 555, 594, 595, 55 S.Ct. 854, 79 L.Ed. 1593. In the Radford case, one of the grounds of the rejection as unconstitutional of the original Frazier-Lemke Act was its deprivation of a lienholder of "the right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself." 295 U.S. at pages 594, 595, 55 S.Ct. at page 865, 79 L.Ed. 1593. The measure, having been substantially revised to meet this, and other judicial objections, was reenacted and, as amended, came before the court in Wright v. Vinton Branch, supra. There (300 U.S. at page 459, 57 S.Ct. at page 560, 81 L.Ed. 736, 112 A.L.R. 1455) examining the specific issue of the right of the secured creditor to bid at the sale, the court says of the present measure: "The new Act does not in terms provide for 'The right to protect its (the mortgagee's) interest in the property by bidding at such sale whenever held.' *But the committee reports and the explanations given in Congress make it plain that the mortgagee was intended to have this right. We accept this view of the statute."* (Emphasis added.) And by copious annotation to the Congressional Record the court documents *its* conclusion respecting the legislative intent. 300 U.S. at pages 459, 460, 57 S.Ct. at page 560, 81 L.Ed. 736, 112 A.L.R. 1455.

Nothing in Wright v. Union Central Life Insurance Company, 311 U.S. 273, 61 S. Ct. 196, 85 L.Ed. 184, impairs the convincing effect upon this point, of Wright v. Vinton Branch, supra. In Wright v. Union Central, supra, the issue was upon the right of a secured creditor to intercept the debtor's redemption privilege during the stay period by the device of a trustee's sale ordered in consequence of the debtor's default or contumacy. And the court held the redemption right to be superior to the creditor's right to sale in those circumstances. But in the instant case, (a) the three year stay of proceedings expired without redemption upon the basis of the initial appraisal or otherwise, (b) after the expiration of that three year period a reappraisal was ordered upon the petition of the debtor and an additional period of time was prescribed within which

he might redeem at the reappraised value, and this also elapsed without redemption, and (c), even now, and in the sale under examination, it is contemplated by all parties that he shall have the statutory ninety days allowed under Title 11 U.S.C.A. § 203, sub. s(3) within which to redeem at the sale price plus interest. Indeed, the concluding two paragraphs of the court's reasoning in Wright v. Union Central, supra (311 U.S. at pages 281, 282, 61 S.Ct. at page 201, 85 L.Ed. 184), may reasonably be regarded as expressly sustaining the exact course which the trustee, in the present instance, invites the court to pursue in accepting the secured creditor as bidder and allowing it credit on its bid for the amount thereof applicable to its lien.

■ What need, therefore, exists for the insertion by a district court into one of its orders for trustee's sale under Title 11 U.S.C.A. § 203, sub. s(3), of a provision permitting a secured creditor to be a purchaser at the sale of the land constituting the security for his claim? The order and the sale are made under the statute, which, and whose terms, as interpreted by the Supreme Court, are implicitly an integral and ineluctible part of the order. The permission for the secured creditor to bid in this particular situation is derived from the statute. Indeed, it would seem that in the ordinary case, the court could not licitly deprive him of it by an order forbidding him to bid.

What has been said thus far has specific reference to sales under the provisions of the farm debtor phase of the bankruptcy jurisdiction. Thus, even though the rule were otherwise in the general practice of bankruptcy, the right of the secured creditor to purchase at sales under the farm debtor bankruptcy amendment is to be referred primarily to the farm debtor bankruptcy procedure contained in Title 11 U.S.C.A. § 203, sub. s(3), particularly in states where, as in Nebraska (vide infra), the right of a mortgagee to bid at a sale in foreclosure of his security exists under the state law.

■ But, even in general bankruptcy proceedings, the rule prevails that, in the absence of directions contra, in an order for sale, a secured creditor may purchase at a trustee's sale. Collier on Bankruptcy, 14th Ed., Section 70:98, Vol. IV, p. 1572; id., p. 1618; American Digest System (Key No. Series) Title "Bankruptcy", ☞268 (b); Corpus Juris Secundum, Vol. 8, p.

1050, Title "Bankruptcy", § 318; In re Harralson, 8 Cir., 179 F. 490, 491, 29 L.R.A.,N.S., 737; Clark Hardware Co. v. Sauve, 8 Cir., 220 F. 102 (opinion by Judge Thomas C. Munger sitting with Circuit Court of Appeals); In re Waterloo Organ Co., D.C.N.Y., 118 F. 904; In re Old Oregon Mfg. Co., D.C.Wash., 236 F. 804; In re Columbia Cotton Oil & Provision Corp., 4 Cir., 210 F. 824; Schuler v. Hassinger, 5 Cir., 177 F. 119; First National Bank v. Brennan, 3 Cir., 18 F.2d 540.

To be sure, it is the usual practice in general bankruptcy proceedings to provide expressly in orders for trustees' sales of property, that lienholders may purchase and take credit on their bids on account of their liens, or deposit bonds or debentures in lieu of cash. But that practice undoubtedly arises out of the almost infinite variety of circumstances and conditions under which such orders are made and such sales are held. Orders for sale under the provisions of Title 11 U.S.C.A. § 203, subd. s (3) are normally analogous to decrees or orders for sale in foreclosure of real estate mortgages; and in such decrees or orders the permission in question is rarely found, save in complicated cases where the right of a debenture trustee to purchase is in question; incident to which arises also his authority to employ bonds or debentures instead of cash in payment of his purchase price.

Accordingly, this court concludes without difficulty that the secured creditor was a proper bidder and purchaser at the sale held in this case.

The matter of allowing to the purchaser credit upon its bid to the extent that the proceeds of sale are applicable upon its lien is not doubtful. Collier on Bankruptcy, 14th Ed., Section 70:99, Vol. IV, p. 1618. In Clark Hardware Co. v. Sauve, supra [220 F. 103], Judge Munger said: "Nor did the court below act beyond its discretion, in allowing, upon confirmation of the sale, a credit to the purchaser, if the holder of a valid lien on the property, of the amount that otherwise would accrue to him by reason of his lien, *as it was needless for the purchaser to pay into court money that must be repaid to him.*" See also: In re Harralson, 8 Cir., 179 F. 490, 29 L.R.A.,N.S., 737; In re Saxton Furnace Co., D.C.Pa., 136 F. 697; In re Fayetteville Wagon-wood & Lumber Co., D.C.Ark., 197 F. 180.

Here, as the court has already observed, no one has yet absolved the purchaser from the obligation, if the circumstances warrant, to pay its full bid to the trustee in cash. The trustee merely recommends that such absolution be granted, and granted now by the judge as an incident to confirmation of the sale. His eminently sensible and orderly recommendation will be adopted by the court.

The practice which the court approves in this instance is in strict consonance with the usage in judicial sales of incumbered real estate in Nebraska's state courts. Mention is made here of the state's practice: First, because in Louisville Bank v. Radford, supra, and Wright v. Vinton Branch, supra, the practice in the state courts of the states whose real property was involved was emphasized; and, secondly, because it seems appropriate to observe that in the procedure now followed the debtor is not being deprived of any right or advantage which he would have in appropriate comparable litigation in the local state courts.

Construing the pertinent statutes of this state, its Supreme Court has consistently held that, unless the contrary is directed in the order of sale, or, more particularly, in the decree in pursuance of which it is issued, all judicial sales in the state are for cash. Hooper v. Castetter, 45 Neb. 67, 63 N.W. 135; Gosmunt v. Gloe, 55 Neb. 709, 76 N.W. 424; DeMoulin Loan & Investment Co. v. McLain, 107 Neb. 858, 187 N.W. 123; Rife v. Swanson, 109 Neb. 814, 192 N.W. 498.

It is equally established in Nebraska that the lienholder may lawfully become the purchaser at a sale held for the satisfaction of his lien. Hooper v. Castetter, 45 Neb. 67, 63 N.W. 135; Lockwood v. Cook, 58 Neb. 302, 78 N.W. 624; McLagan et al. v. Witte, 1 Neb., Unof. 438, 96 N.W. 490; Stover v. Stark, 61 Neb. 374, 85 N.W. 286, 87 Am.St.Rep. 460; Missouri Valley Trust Co. v. Nelson, 104 Neb. 499, 177 N.W. 835.

And despite the requirement that judicial sales be for cash unless otherwise ordered, it is uniformly held in Nebraska that this rule does not prevent a purchasing lienholder from receiving credit on his bid to the extent that, under the decree for

sale, the purchase price is applicable on his lien. Hooper v. Castetter, supra; Lockwood v. Cook, supra; DeMoulin Loan & Investment Co. v. McLain, supra; McLagan et al. v. Witte, supra; Campbell v. Gawlewicz, 3 Neb. Unof. 321, 91 N.W. 569.

Citations might be added in great number upon each of the foregoing points of Nebraska practice. It will not be asserted or supposed by counsel that there is any presently valid authority to the contrary upon any of them. So far have they become recognized in the state's jurisprudence that, in the prevailing practice, decrees of foreclosure of mortgages and orders of sale thereunder, direct the sale of the foreclosed property for cash without any provision or restriction relative to the eligibility of bidders; and the holders of the liens foreclosed uniformly bid at the sales; and, if they are returned as purchasers, take credit on the purchase prices for the amounts returnable therefrom to them. Incidentally, in such instances in the state practice the sheriff receives no statutory commission upon so much of the purchase price as is represented by credit on account of the lien.

While the debtor's showing refers to "chilling, puffing, padding and diminishing competition", in the bidding at the sale, no evidence of any of such actions was offered, and the record itself discloses no situation even suggesting any of them.

A charge is made in the showing of the debtor that the secured creditor failed to "execute and file its bond of indemnity to said trustee covering said fees and costs" as required by the order for sale. No formal undertaking or bond was required by the order. It directed only that the secured creditor "indemnify said trustee for all costs and fees incurred by reason of said sale in the event the proceeds of said sale are insufficient to pay the costs and the expenses thereof." The provision was for the trustee's security. The precise manner of compliance with it was not prescribed, and was, therefore, left to the proper discretion of the trustee. And it is obvious that it is now academic.

Apart from the matters already discussed at substantial length, no complaint is made by the debtor of any formal or practical irregularity or infirmity in the proceedings of the trustee or in his sale. And the record of them is strictly regular. No objection is made that the bid is inadequate or that a resale would secure a higher price for the property. In fact, if the debtor's position is fairly to be discerned from his objections, he makes the unique complaint rather that the property brought too much than that it sold for less than its fair value. And the purchase price accords very well with the determination of value of the land made fairly recently by the court after thorough hearing (vide supra).

Accordingly, the court finds that the sale was conducted in all respects in accordance with law; that the real estate sold thereat was sold for its fair value under the circumstances and conditions of the sale, and that a greater price could not be obtained for it by its resale. Upon which, the debtor's showing against confirmation of sale is overruled; and the trustee's sale is confirmed; and execution and delivery are ordered of trustee's deed to the purchaser immediately upon the expiration of ninety days from the date of sale, unless the debtor shall theretofore redeem the real estate by paying into court therefor the sum of twenty-three thousand five hundred ($23,500) dollars with interest thereon at the rate of five per cent per annum from May 9, 1944, to the date of such payment; and the issuance upon the purchaser's request therefor, after the execution and delivery of the trustee's deed, of a writ of assistance to place the purchaser in possession of the property is ordered. Costs of sale are taxed and distribution of proceeds ordered, as proposed in the report of sale, and the purchaser is allowed to take credit on its bid for the amount thereof repayable to it. Without further particularity in this memorandum, the order will follow, in its practical details, the recommendations made by the trustee in his report.

Counsel for the secured creditor and purchaser will promptly prepare an order accordingly, submitting it to counsel for the debtor for approval as to form, and, if approved, to the court for signature and entry; or in default of approval, upon three days' notice to the judge filing this memorandum in chambers at Lincoln, for settlement.