STARK, Appellant, v. LOVE et al., Respondents.

**St. Louis Court of Appeals, November 18, 1907.**

1. **MORTGAGES AND DEEDS OF TRUST: Surplus after Sale: Prior Liens: Rights of Subsequent Mortgagee.** Where real estate encumbered by three deeds of trust was sold under the power contained in the second deed of trust, the trustee in the second deed of trust having been the maker of the notes secured by the first, such trustee was liable to the third mortgagee for the surplus arising from such sale, and could not by an agreement with himself as the first encumbrancer apply such surplus upon the first mortgage.

2. ————: ————: ————: ————: **Fraud.** And in such case, where it was shown that the trustee was himself the real purchaser, this was a fraud in law and the holder of the third mortgage could elect to hold the sale void and redeem or to compel the trustee to account for the surplus; the trustee could not set up his own fraud in the sale as a defense to an action for an accounting.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED.

*Chester H. Krum* for appellant.

(1) Where there are several deeds of trust covering the same property, and a sale is made under an intermediate deed, the surplus proceeds after satisfying the debt secured by the foreclosed deed must be applied on the junior and not on the senior deed. Holweg v. Heitkamp, 20 Mo. 569; Forster v. Potter, 37 Mo. 534; Reed v. Mullins, 43 Mo. 306; Strawbridge v. Clark, 52 Mo. 21; Abbe v. Justus, 60 Mo. App. 305; Scott v. Shy, 53 Mo. 478; Schmidt v. Smith, 57 Mo. 135. (2) To authorize a payment to the senior as against the junior mortgagee the language of the instrument must be clear and unmistakable to support it under the rule that all powers are to be strictly construed. Boles v. Perry,

51 Mo. 451; Polliham v. Reveley, 181 Mo. 635. (3) The payment of a note extinguishes all obligation thereunder and at the same time satisfies a deed of trust, given to secure it so that the title reverts to the grantor without a reconveyance. Land Co. v. Zeitler, 182 Mo. 268; Pease v. Iron Co., 49 Mo. 127; McNair v. Picotte, 30 Mo. 57; Mead v. Hutchinson, 11 Mo. 628; Kemp v. Insurance Co., 41 Mo. App. 31; Johnson v. Johnson, 81 Mo. 336; Greenabaum v. Elliott, 60 Mo. 28-9; Mead v. York, 6 N. Y. 449; Breckenridge v. Ornsby, 1 J. J. Marshall (Ky.) 236; Thomas' Appeal, 30 Pa. St. 317; Merville v. Chase, 3 Allen (Mass.) 339; Luther v. Upton, 19 Pick. 434; Brooks v. Ruff, 37 Ala. 371. (4) Where a mortgagor or his legal representative has the right to set aside a sale irregularly made he is not confined thereto, but may elect to surrender his right of redemption and recover the surplus proceeds of the sale from the delinquent mortgagee or trustee. Price v. Blankenship, 71 Mo. App. 548, 144 Mo. 203; Boogher v. Frazier, 99 Mo. 325; Joyner v. Farmer, 78 N. C. 196.

*John E. Love pro se.*

BLAND, P. J.—There were three deeds of trust on a lot of ground in block No. 3741, city of St. Louis. The senior deed was to secure a note of $1,000 and seven interest notes; the intermediate one was to secure a note of $3,200 and six interest notes; the junior one was to secure a note of $1,800 and four interest notes. Defendant John E. Love was trustee in the intermediate deed of trust, and as such trustee advertised and sold the lot at public auction, at which sale one Elizabeth Raebel became the highest and best bidder for the property. Out of the proceeds Love paid the debt and interest, amounting to $3,333.55, and applied the surplus, after paying the expenses of the sale, as a credit on the note of $1,000 secured by the senior deed of trust. Plaintiff,

by assignment, held the junior deed of trust prior to and at the time of the sale, and as such assignee demanded the surplus, which Love refused to pay. The suit is for an accounting and to recover the surplus alleged in the petition to be $666.45.

At defendant's request, the trial court found the facts as follows:

"On October 25, 1901, by deed on that date, and acknowledged and recorded on November 5, 1901, in consideration of the sum of $1,500—the receipt of which the grantor, defendant Love, acknowledges in said deed to have been paid to him—John E. Love, the defendant, conveyed to Ignatz Heet a lot of ground in Block 3741, in the City of St. Louis, Missouri, containing a front of thirty feet on the north line of Cook avenue, by a depth north of 160 feet, to an alley twenty feet wide, and being known as the west thirty feet of lot number fifty-two of Beardslee's subdivision of the Chancellier tract in said block, per the recorded plat thereof. This property will hereafter be referred to as the 'property in controversy.' The deed expressly recites that the conveyance is subject to a deed of trust to G. F. Dudley, trustee, dated February 23, 1901, and for $1,000.

"I find that the entire consideration for this conveyance was $1,500, and the sale, subject to the deed of trust for $1,000 to G. F. Dudley, trustee, dated February 23, 1901, was a part of the consideration of $1,500. In other words, that the grantee in said deed paid, or agreed to pay, only the sum of $500 in cash. As a matter of fact Heet testified that he never had any interest in the property, and at no time was the real owner thereof. This fact, however, is utterly immaterial in my view of the law. Heet accepted and ratified the deed made to him on the twenty-fifth day of October, 1901, by deed dated on that date, and acknowledged and recorded on the fifth day of November, 1901; Heet signed and delivered a deed of trust, conveying the property in contro-

versy, 'together with the building now being erected thereon, and known as 4005 Cook avenue, and also other buildings now on said lot, or that may hereafter be erected on said lot,' to defendant Love, to secure one E. W. Hall the payment of one principal note, due three years after date, for $3,200, and six interest notes, each for $96, all of even date, with the deed of trust, to-wit: October 25, 1901, the principal note being payable three years after date, and maturing October 25-28, 1904, and the interest notes being payable in 6, 12, 18, 24, 30, and 36 months after date, respectively. The last mentioned deed of trust provided that when one of said notes— whether of interest or principal—becomes due and payable and remains unpaid, then all of said notes become due and payable at once, whether due on their face or not. It is further provided in said deed, 'and said party of the first part hereby guarantees to said party of the third part that said property herein described is free and clear of mechanics' liens; said party of the first part agrees that in case any liens should hereafter be filed against said property, after the execution of this trust, and in that case, said liens so filed shall have the same force and effect as if any one of said notes, herein-before described, shall have become due and payable, and all the covenants and agreements herein provided shall be in full force and effect and carried out as if said notes were actually due and payable. And in the event said party of the third part, or his assigns or legal representatives, or the party of the second part, or his successors in trust, shall expend any money to protect the title or possession of said premises, or for such insurance, as aforesaid, then any such money, so expended, shall be a new and additional principal sum of money, secured by this instrument, and shall be payable on demand, and may be collected with interest thereon at the rate of eight per cent per annum from the time of so expending the same.'

"In the event of default in the payment of any of the notes, above mentioned, at maturity, or if default be made in the due fulfillment of any of the covenants and agreements, the trustee is authorized to sell the property at public sale at the east front door of the courthouse, in the city of St. Louis, to the highest bidder for cash, and is authorized to receive the proceeds from such sale; 'out of which he shall pay, first, the cost and expense of executing this trust, including lawful compensation of said trustee, and next he shall repay to any person or persons, who may or shall, under the covenants hereinbefore set forth, have advanced or paid any money for taxes, mechanics' liens or insurance, as above provided; all sums so, by him or them advanced, and not already repaid, together with interest thereon at the rate of eight per cent per annum, from date of such advances till date of payment; and next, the amount unpaid on said notes, together with the interest accrued thereon, and the remainder, if any, shall be paid to the party of the first part, or his legal representatives.'

"On November 5, 1901, by deed of that date, acknowledged on the same day and recorded on May 29, 1902, Heet conveyed the property in controversy to one Boughen, by a technical quitclaim deed.

"On the fifteenth day of May, 1902, Boughen and wife conveyed the property in controversy to defendant, Western Realty & Investment Company, a corporation, said deed was acknowledged on May 19, 1902, and duly recorded on the twenty-ninth day of May, 1902, the deed being a technical quitclaim deed, conveying to the defendant corporation whatever right of title Boughen had to the property.

"On May 14, 1902, by deed of that date, acknowledged on May 19, 1902, and recorded on May 29, 1902, Boughen and wife conveyed the property in controversy, 'subject to incumbrances, as shown by the records,' to one Amlar as trustee, to secure to E. S. Albright the

payment of five negotiable promissory notes of even date with said deed, to-wit, May 14, 1902, one principal note being for the sum of $1,800, due two years after date, and four interest notes, each for $54, due 6, 12, 18, and 24 months after date; all notes to bear interest from maturity at the rate of eight per cent per annum.. This deed of trust, executed by Boughen, as to covenants and agreements, is the same in form as the deed of trust from Heet to Hall, trustee. The five notes, last above mentioned, are indorsed in blank by E. S. Albright, the payee named therein, and are the same notes, together with the deed of trust, which were transferred and delivered to the plaintiff Stark, as collateral, to secure to him the payment of $521, due him by the Western Realty & Investment Company. I find that these notes were transferred and delivered to the plaintiff some time between the first and thirtieth day of June, 1904, and before the sale under the deed of trust, hereinafter mentioned, made by John E. Love to Elizabeth Raebel on June 30, 1904. The transfer of the Boughen notes was made to plaintiff Stark after the maturity of said notes, that is, after May 17, 1904, the last day of grace upon the principal Boughen note.

"On June 30, 1904, John E. Love, the defendant, as trustee in the deed of trust, sold the property at public sale to Elizabeth Raebel for the consideration, as stated in the deed, of $4,000. The sale under this deed of trust took place at the east front door of the courthouse on June 30, 1904, in this city, and as a matter of fact Elizabeth Raebel (a stenographer or clerk in the office of defendant Love) was not the real purchaser of the property, but the property was bought in her name by the defendant Love, and thereafter, to-wit, on July 11, 1904, said Raebel by a quitclaim deed conveyed the property in controversy to the defendant Love, for a consideration of $1.00. On July 14, 1904, in consideration of the sum of $2,400—the receipt of which is ac-

knowledged by Love—Love conveyed the property in controversy by warranty deed to Leonard D. Putney and wife, and warrants the title, except as against the taxes for the year 1904, and thereafter.  This deed to Putney and wife was acknowledged and recorded on July 14, 1904.  The earnest money receipt, given by the defendant Love to Putney and wife, shows that the consideration for the deed was the sum of $2,400; out of which, however, Love agreed to pay to Putney a commission, and agreed also to pro-rate the taxes for the year 1904, so that the actual amount received by Love, for the sale of the property to Putney and wife, was about the sum of $4,100.  The earnest money receipt is dated July 12, 1904, and Love agrees to convey a perfect title, and in default of being able to make a perfect title, within a reasonable time, the earnest money was to be returned and the sale declared off.

"I find as a matter of fact, that the sale to Putney and wife, by the defendant Love, was practically consummated before the property was sold by Love, as trustee, on June 30, 1904.  The expenses of the sale incurred by Love as trustee under the Heet deed of trust, were as follows:

| | |
|---|---|
| For advertising, . . . . . . . . . . . . . . . . . . . . | $20.50 |
| Notary's fees, . . . . . . . . . . . . . . . . . . . . . | .50 |
| And a commission claimed by Love, as trustee, of . . . . . . . . . . . . . . . . | 50.00 |
| Making a total expense of . . . . . . . . | $71.00 |

if the commission caimed by the trustees, under the circumstances in evidence, is a valid claim.  If the claim for commissions is allowed, the net proceeds collected by Love as trustee amounts to $4,029.  If his claim is disallowed the net proceeds amount to $4,079.

"At the time of the sale, under the Heet deed of trust, to-wit, June 30, 1904, two of the notes described in the deed of trust were past due and unpaid—at least,

it is so stated in the advertisement published by the trustee, a copy of which is attached to the trustee's deed to Elizabeth Raebel. The testimony does not show, however, what two notes were thus unpaid. The principal note for $3,200, in the Heet deed of trust was not due until the 25-28th day of October, 1904. The first interest note for $96, the second interest note for $96, the third and fourth interest notes, and the fifth interest note were likewise past due—each of said interest notes being for the sum of $96. It appears, however, from the testimony of Love, and from the memorandum made by him on the Heet deed of trust introduced in evidence, that only one of these interest notes remained due and unpaid at the time of sale, and that must have been the fifth interest note for $96; so that on the date of sale there was due under the Heet deed of trust the principal sum of $3,200, and one interest note for $96, making a total of $3,296. The fifth interest note for $96, payable thirty months after date, matured on April 25-28th, 1904, and interest is therefore to be computed upon the principal sum of $3,200, and likewise on the interest note of $96, from April 25, 1904, to the thirtieth day of June, 1904, at the rate of six per cent per annum, making a total of interest due on the date of sale of $43.95, as computed by the defendant, Love, and which is substantially accurate; adding this interest to the principal sum of $3,296, makes a total due, under the Heet deed of trust, on the day of sale, of $3,339.95.

"Disallowing the commission of $50 claimed by Love as trustee under the Heet deed of trust, he should have had on hand, after deducting the amount due under that deed of trust, the sum of $739.05. If the commission of $50 is allowed, the balance in his hands would be $689.05.

"Defendant Love applied the sum of $647.52, as appears from his memorandum, on the first deed of trust, known as the 'Dudley deed of trust.' This amount being

practically the surplus in his hands, after satisfying the Heet deed of trust, the expenses incurred under the same and the commission claimed by Love.

"I further find that defendant Love conveyed the property in controversy to Putney and wife, free of all liens created by deed of trust; that he was enabled to do this at the time of the purchase of the property by him at the sale on June 30, 1904, through Raebel, because Love then owned and held the Dudley note, said note being the note of defendant Love for $1,000, and secured by a first lien on the property in controversy (unless, as a matter of law, the fact that Love had taken up and paid the note operated as to plaintiff, as a discharge of such lien).

"I further find that the conveyance by warranty deed by Love to Putney was not known to the plaintiff or to the Western Realty & Investment Company on July 13, 1904, on which date the plaintiff notified defendant Love, that he was the owner of the deed of trust and notes described therein, dated May 14, 1902, executed by Boughen to Amlar, trustee. The notice thus given recites that Love sold the property to Raebel for the consideration of $4,000. I find that this notice is a ratification by Stark of the public sale, made by the defendant Love on June 30, 1904, but is not a ratification of the subsequent conveyance from Love to Putney; that at the time of the giving of this notice, to-wit, on July 13, 1904, the plaintiff was not aware of the sale to Putney; that at the time of the sale under the Heet deed of trust, on June 30, 1904, the defendant Love had taken up the notes and deed of trust, dated February 23, 1901, being the Dudley deed of trust, for $1,000, and at the time of the sale under the Heet deed of trust, Love owned and controlled said Dudley deed of trust and the notes thereby secured.

"I further find from the evidence, that at the sale made by Love, as trustee under the Heet deed of trust,

on June 30, 1904, Love sold the property under the Heet deed of trust as if it were a first deed of trust or first lien upon the property, and that, in buying the property in, the name of his stenographer Raebel, he did so with the purpose and intent of thereafter conveying it for the net sum of $4,100 to Putney and wife."

The court found the issues for defendants and rendered judgment in their favor. The appeal is from this judgment.

The finding of the facts is very full and in accordance with the evidence. The trial court's conclusions of the law were that the trustee's sale was void but plaintiff ratified the sale by demanding the surplus and was entitled to it if nothing more appeared in the case. But that plaintiff could not recover for the reason, "His right was the right to set aside the sale as being illegal. He cannot condone the offense of the trustee, in making an illegal sale, and at the same time claim the benefit of such illegal conduct."

The trial judge said: "I am satisfied from the evidence in this case that when Love bid the property in under the second deed of trust, that he did so with the intention of conveying the title to Putney, free from the incumbrance which he (Love) then held, as the first lien on this property; namely, the Dudley mortgage. He did not sell solely and exclusively under the second deed of trust as a matter of fact. He sold under the second deed of trust, but intended to include, and did include, in the sale the first deed of trust, in order that he might be in a position to convey a clear title to the party to whom he had practically contracted to convey it. Love, himself, owned the first deed of trust, and in order to make a clear title to the purchaser from him, that is, Putney, he undoubtedly intended to pay of the proceeds of the sale the prior incumbrance, which he himself held, out of the excess that there might be over and above the

128 App.—3

second deed of trust. While it is undoubtedly true that he had no authority to do as he did, and the sale for that reason would have been voidable at the instance of the plaintiff, yet that, in my opinion, was the extent of plaintiff's right. The plaintiff cannot, in my opinion, absorb the first deed of trust by standing by and permitting the defendant Love to carry out his contract with Putney, with knowledge of the facts which enabled him, if he had seen fit so to do, to set aside the sale and thus compel Love to account to him for the excess over the second deed of trust, which, as a matter of fact, was realized in the manner and under the circumstances indicated in this opinion.

I am not influenced in the slightest degree, in this conclusion I have reached as to the law, by the covenants contained in the Heet deed of trust, to which my attention has been called by counsel on either side. The plaintiff could have disaffirmed or set aside the purchase by Love of the property in controversy, and have reinstated all parties concerned in their rights as they existed prior to the sale.

If with knowledge of all the facts, he elects not to do this, but to ratify or confirm the sale, he must be held to have ratified all things done by the trustee, by means of which the trustee was enabled to procure the sum of $4,100, as the purchase price of the property in controversy."

Love testified he took up the first deed of trust in March, 1904, by paying the debt it was given to secure to the then holder, and that he took up the second deed of trust (under which he made the sale) before the date of the sale and held both deeds of trust at the time of the sale and had them at the sale. In Love's deed to Heet, the latter assumed the payment of the Dudley deed of trust for $1,000. Defendant Love was the grantor in the Dudley (the senior) deed of trust and the maker of the note it was given to secure; by his deed to Heet,

the latter became the principal of that note and Love his surety for its payment. Heet failed to pay the note, and Love testified he was compelled to take it up to protect the property; in making this payment he paid his own debt and thereby satisfied the deed of trust. But even if this incumbrance was not extinguished by payment, no power was given Love, as trustee in the deed of trust under which he made the sale, to apply the surplus to satisfy, or as a credit on the prior deed of trust, unless there was an agreement with the purchaser and the parties in interest that such application should be made. Love being both seller and purchaser and principal party in interest at the time of the sale could not make the agreement with himself. [Scott v. Shy, 53 Mo. 487; Schmidt v. Smith, 57 Mo. 135.] In Mead v. McLaughlin et al., 42 Mo. 198, it was held a trustee is authorized under a deed of trust to pay off debts which constitute liens subsequent to the deed of trust. In Helwig v. Heitcamp, 20 Mo. 569, it was ruled that where there were three deeds of trust and the sale was made under the second, the surplus should be applied to the third; and in McGuire v. Wilkinson, 72 Mo. 199, it was held the surplus in the hands of a trustee after selling under a prior deed of trust was subject to garnishment by a junior judgment creditor of the mortgagor, when the judgment was a lien upon the land. On these authorities it is plain that the surplus in Love's hands should have been applied to the junior deed of trust. The learned trial judge held, however, that plaintiff's remedy was to set aside the trustee's sale on the ground of fraud in the making of the same. This holding can only be sustained on the theory that the sale by Love was absolutely void, and that he is in a position to set up his own fraud as a defense in this action. Perry says: "If a trustee or mortgagee purchases the property thus within his power to sell, and the title is conveyed to him, either directly or indirectly, through a third person, he will continue

to hold the property upon the old trust, or the mortgagor may redeem. The execution of the trust or the foreclosure of the mortgage has not been advanced." [2 Perry on Trusts, section 602v, p. 194.]

In Byrne v. Carson, 70 Mo. App. 1. c. 131, the Kansas City Court of Appeals, speaking through SMITH, P. J., said:

"It is well settled that a mortgagee cannot legally become a purchaser at his own sale unless authorized or consented to by the parties in interest. And it matters not that the sale was bona fide and for a fair price. The rule is not intended to remedy the wrong but is intended to prevent the possibility of it. [Moore v. Thompson, 40 Mo. App. 195.] Such a purchase constitutes a fraud in law and to authorize the setting aside of a sale so made it is not required that there should be actual fraud. And where the mortgagee purchases at his own sale through the interposition of another, such interposition is a badge of fraud and the sale may be avoided by the mortgagor."

There is no evidence tending to show Love acted in bad faith. He was honestly doing the best he could to save what he had invested in the lot, but under the proof his sale, as trustee, was fraudulent in law, and for this reason his good faith is not available as a defense in this action, for it has never yet been permitted to a party to allege his own fraudulent acts, whether in law or fact, as a defense in a court of justice. We think the trial court was justified in refusing to allow Love any commission for making the sale as trustee. Plaintiff did not participate in the trustee's sale, had nothing whatever to do with it. He was not a party in any sense to the fraudulent trustee's sale, and had the right to treat it as a valid sale and demand the surplus.

For the reasons herein stated the judgment is reversed and the cause remanded. All concur.