# Richmond.

## J. M. Seward v. New York Life Insurance Company.

March 20, 1930.

Absent, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Claude R. Wood* and *A. B. Dickinson*, for the plaintiff in error.

*Fred Harper*, for the defendant in error.

Epes, J., delivered the opinion of the court.

This is a proceeding by attachment filed November 14, 1927, by the New York Life Insurance Company against J. M. Seward, a non-resident, as principal defendant, and W. A. Llewellyn as co-defendant, to recover from Seward $2,303.55 with interest from October 5, 1927, which is the balance due on certain notes, aggregating the principal sum of $8,500.00, drawn by Thos. M. Nunn payable to the order of the New York Life Insurance Company, which were secured by a first lien deed of trust on a tract of land in Buckingham county, Virginia, known as "East View," containing 539 acres, the payment of which notes the New York Life Insurance Company alleged were assumed by Seward, who purchased the "East View" property at a sale made under a second deed of trust, by accepting from Andrews and Wood, the trustees in the second deed of trust, a deed to the "East View" tract wherein it is recited that Seward assumes the payment of said $8,500.00 debt secured by the first deed of trust.

Seward in effect pleads the general issue in assumpsit. The case was tried before the court without a jury. The court entered a personal judgment against Seward in favor of the New York Life Insurance Company for the amount sued for, to which judgment Seward assigns error.

The first assignment of error is that the court erred in entering judgment against Seward because the

alleged promise of assumption, if in fact made by Seward, was without consideration and therefore unenforceable.

The only evidence introduced before the court was the notes sued on, the three deeds below mentioned, and a very brief and incomplete stipulation of facts.

The three deeds introduced in evidence, which are designated as exhibits 1, 2 and 3, all convey identically the same property, a tract of land in Buckingham county, Virginia, containing 539 acres, known as "East View."

Exhibit 1 is a deed of trust dated July 16, 1923, recorded July 31, 1923, from Thos. M. Nunn and wife to Andrew L. Todd, trustee, conveying the "East View" tract in trust to secure the payment of the principal sum of $8,500.00, repayable in annual installments extending over a period of thirty-five years, evidenced by notes of Thos. M. Nunn payable to the order of the New York Life Insurance Company. The deed provides that if default be made in the payment of any note, the entire principal amount secured by the deed, with accrued interest, shall become due and matured.

Exhibit 2 is a second deed of trust dated and recorded July 31, 1923, from Thos. M. Nunn and wife to J. P. Andrews and Claude R. Wood, trustees, conveying with general warranty the "East View" tract to said trustees to secure a debt of $2,925.00 due by Nunn to Seward. This deed recites the prior deed of trust for $8,500.00 and provides that "this lien is intended to be a second lien on the property." The only provision as to sale contained in this deed of trust is the following incomplete sentence: "In the event that default shall be made in the payment of any one or more of the aforementioned notes when and

as the same shall become due and payable then the trustees or either of them *shall whenever required hereunder to sell the property conveyed hereunder to satisfy the debt herein secured.*" There is no provision as to the disposition of the proceeds of sale.

Exhibit 3 is a deed from J. P. Andrews and Claude R. Wood, trustees, to J. M. Seward dated and acknowledged November 10, 1924, recorded January 9, 1925, conveying with special warranty the "East View" tract of land. This deed after reciting the said deed of trust from Nunn and wife to Andrews and Wood, trustees, (exhibit 2) and the default thereunder, in so far as material, reads as follows:

"Whereas—the said J. P. Andrews and Claude R. Wood, in execution of the said trust therein declared, did on the 30th day of October, 1924—expose to sale the tract or parcel of land aforesaid at public auction to the highest bidder for cash, according to the terms of the aforesaid deed of trust; at which sale the said J. M. Seward became the purchaser thereof, being the highest bidder:

"Now, therefore, for and in consideration of the promise, and for the further consideration of $10,-000.00, $1,500.00 of which is paid in cash to the said J. P. Andrews and Claude R. Wood by the said J. M. Seward and $8,500.00 the remainder thereof which is due to the New York Life Insurance Company of New York, it holding the first deed of trust on the said tract or parcel of land, is assumed by the said J. M. Seward at and before the sealing and delivery of this deed, the receipt of all of which is hereby acknowledged, the said J. P. Andrews and Claude R. Wood, trustees as aforesaid in the said deed of trust doth grant," etc.

This deed (Exhibit 3) is signed by Andrews and Wood, trustees, but not by Seward.

The stipulation of facts reads as follows:

"1. It is agreed that Seward is a non-resident of Virginia.

"2. That Mr. Llewellyn has property in his hands belonging to Seward shown in his answer, and

"3. The amount sued for is the correct balance due the plaintiff.

"4. Copy of the first deed of trust, Exhibit 1, and second deed of trust, Exhibit 2.

"5. That property was put up by trustees under the second deed of trust and sold to. J. M. Seward subject to the first deed of trust, and was so knocked out to him and the trustees executed to him the deed, Exhibit 3.

"6. Property was subsequently sold by the trustee under the first deed of trust, Exhibit 1, and the sale resulted in the deficit sued for.

"7. Notes secured under first deed of trust exhibited in evidence."

The record is a very unsatisfactory record upon which to make an adjudication of the rights of the parties. It leaves to inference what there seems no reason for not having either stipulated with certainty, or presented the testimony with reference to which, for instance, the amount bid by Seward at the sale at public auction; and it therefore becomes necessary to state what we deem to be the facts proven in and the inferences properly to be drawn from the record.

Andrews and Wood, trustees, in making sale under the second deed of trust did not offer the "East View" tract for sale subject to the first deed of trust, the same to be assumed and paid off by the purchaser, nor did they offer it for sale free and clear of the lien of the first deed of trust, the same to be paid off out

of the purchase money or assumed by the purchaser as a part of the purchase price; and we are not here concerned either with the right and authority of the trustees to have so offered the property for sale or what would be the rights of the parties had it been so offered for sale and purchased by Seward.

The trustees under the second deed of trust offered the "East View" tract for sale merely subject to the first deed of trust, that is, they offered for sale only the equity of redemption of Thos. M. Nunn therein. The terms of the sale were for cash. Seward bid a cash sum for the equity of redemption, and the equity of redemption was sold to him by the trustees at that bid. The recital in the deed from Andrews and Wood, trustees, that Seward assumed the payment of the first deed of trust was not inserted therein in pursuance of any of the terms of sale upon which the equity of redemption was sold to Seward at the public auction.

That these are correct inferences from the record seems to be conceded by counsel for both sides.

The amount bid by Seward for the equity of redemption is not recited in the deed from Andrews and Wood, trustees, to him, nor is it anywhere stated in the record. Seward contends that the correct inference from the record is that it was $1,500.00. The New York Life Insurance Company contend that the correct inference from the record is that it was $10,-000.00. We are of opinion that the inference that Seward bid $1,500.00 for the equity of redemption is the better supported by the record and the more probable inference; and adopt it as the correct inference.

The deed recites that it is made "in consideration of the premises and the further consideration of $10,-000.00, $1,500.00 of which is paid in cash" and $8,-

500.00 whereof is paid by Seward's assumption of the prior deed of trust. But it goes further and states why Seward's assumption of the prior deed of trust debt for $8,500.00 is accepted in payment of $8,500.00 of the $10,000.00 which it recites is the consideration upon which the conveyance is made. It gives as this reason that $8,500.00 of the recited consideration of $10,000.00 was due to the New York Life Insurance Company as the holder of the first deed of trust. So far as the record discloses, this could not have been true nor the trustees justified in accepting the assumption of the first deed of trust in payment of $8,500.00 of the $10,000.00 recited in the deed as the consideration upon which it is made if Seward's bid for the equity of redemption was $10,000.00 cash.

What Seward bid for and what was sold him was the equity of redemption. Upon such a sale the land in the hands of Seward became, as between Seward and Nunn, primarily liable for the payment of the first deed of trust debt. If, in pursuance of his personal liability therein, Nunn should have been thereafter required to pay the debt, he would have been entitled to have the land in Seward's hands subjected to the reimbursement of himself *pro tanto*. Hence no part of the purchase money could have been due to the New York Life Insurance Company as the holder of the first deed of trust.

Where the owner of land mortgages it by mortgage or deed of trust to secure a debt, and subsequently sells the equity of redemption, the purchaser not assuming the payment of the prior deed of trust, or the equity of redemption is sold under a second deed of trust which is made subject to the first deed of trust, or which excepts from the covenants thereof the first deed of trust, or the equity of re-

demption is sold under judicial procedure, the land in the hands of the purchaser becomes as between the purchaser and his vendor primarily liable for the payment of the first deed of trust debt, and the mortgagor to that extent a surety thereon, though he remains personally liable for the whole debt to the deed of trust creditor. If in such case the mortgagor thereafter be forced to pay the debt in response to his personal liability, he is in equity entitled to be subrogated to the rights of the deed of trust creditor as against the land and may foreclose the deed of trust; but he has no right of recovery against the purchaser for any deficiency that may exist after foreclosing the deed of trust. *Gayle* v. *Wilson*, 30 Gratt. (71 Va.) 166; *Hult* v. *Temple*, 201 Iowa, 663, 208 N. W. 70, 46 A. L. R. 317; *Gerdine* v. *Menage*, 41 Minn. 417, 43 N. W. 91; *Rogers* v. *Hedemark*, 70 Minn. 441, 73 N. W. 252; *Baker* v. *Terrell*, 8 Minn. 195 (Gil. 165); *Barker* v. *Parker*, 21 Mass. (4 Pick.) 505; *Cox* v. *Wheeler*, 7 Paige (N. Y.), 248; *Woodbury* v. *Swan*, 58 N. H. 380; *Strong* v. *Converse*, 90 Mass. (8 Allen), 557, 85 Am. Dec. 732; *Stillman* v. *Stillman*, 21 N. J. Eq. 126; *University State Bank* v. *Steeves*, 85 Wash. 55, 147 Pac. 645, 2 A. L. R. 237 and note at page 243; *Hart* v. *Chase*, 46 Conn. 207; *Hooper* v. *Castetter*, 45 Neb. 67, 63 N. W. 135; *Funk* v. *McReynolds*, 33 Ill. 481; *Kinnear* v. *Lowell*, 34 Me. 299, 25 R. C. L. "Subrogation," section 56, page 1373, 99 Amer. St. Rep. note at page 526.

Correlatively, in such a case, if the purchaser pays off the prior deed of trust debt to protect his equity therein he is not entitled in equity to be subrogated to the right of the first deed of trust creditor to proceed against the mortgagor personally, nor can he take an assignment of the debt and pursue the

personal liability of the mortgagor thereon, nor, if he permits the first deed of trust to be foreclosed, is he entitled to be subrogated to the rights of the first deed of trust creditor to pursue the personal liability of the mortgagor in order to recover for the amount of the debt paid from sale of the land, for the land in his hands has become the primary source for the payment of the debt, to the exoneration, *pro tanto*, of the deed of trust debtor. See *Hult* v. *Temple*, 201 Iowa, 663, 208 N. W. 70, 46 A. L. R. 317 and other cases cited, *supra*.

For the same reasons, where a tract of land is subject to a first and a second deed of trust and the equity of redemption therein is sold under the second deed of trust, in the absence of any directions to the contrary in the second deed of trust, the proceeds of sale are applicable (1) to the payment of the costs of sale, (2) to the payment in full of the debt secured by the second deed of trust, and (3) to the payment of any lien debts *subsequent* in priority to the second deed of trust of which the trustees have knowledge or notice, and any residue of the purchase money is payable to the grantor. The trustees have no right, power or authority, without the consent of the grantor and such subsequent lien creditors, if any, to apply any part thereof to the payment of the prior deed of trust debt, or to accept the assumption of the purchaser of the first lien deed of trust debt as a part payment of the purchase price for the equity of redemption. *Gayle* v. *Wilson*, 30 Gratt. (71 Va.) 166; *Helweg* v. *Heitcamp*, 20 Mo. 569; *Stark* v. *Love*, 128 Mo. App. 24, 106 S. W. 87; *Jones* v. *Shepard*, 145 Mo. App. 470, 122 S. W. 764; *Brown* v. *Bland* (Mo. App.), 229 S. W. 448; *Pilok* v. *Bednarski*, 230 Mass. 56, 119 N. E. 360; *Hooper* v. *Castetter*, 45 Neb. 67, 63 N. W. 135; *Crane* v. *White*,

215 Mass. 478, 102 N. E. 705; *Bobbitt* v. *Stanton,* 120 N. C. 253, 26 S. E. 817; *Norman* v. *Halsey*, 132 N. C. 6, 43 S. E. 473. See also in this connection *Nelson* v. *Turner*, 97 Va. 54, 33 S. E. 390. As bearing upon whether or not the consent of the grantor's wife, if living, is also required for the application in such case of the surplus of the proceeds of sale to the payment of the prior deed of trust, see *section 5119, Code of Va.*, and *Land* v. *Shipp*, 100 Va. 337, 41 S. E. 742.

■ In the instant case there are no provisions in the second deed of trust as to how and upon what terms the property shall be sold or as to the disposition of the surplus after the payment of costs of sale and the debt thereby secured; and *section 5167, Code of Va.*, which provides that the surplus, if any, shall be paid to the grantor, his heirs, personal representatives, or assigns, is controlling.

Therefore in the instant case the surplus, if any, after the payment of the costs of sale and the debt due Seward which was secured by the second deed of trust, was payable to Thos. M. Nunn. No part thereof was due to the New York Life Insurance Company as the holder of the first deed of trust.

■ If Seward's bid for the equity of redemption was $10,000.00 cash, the trustees had no right, power or authority to accept Seward's assumption of the prior deed of trust in payment of $8,500.00 of the purchase price, unless Nunn directed or authorized them so to do or consented thereto. There is nothing in this record which warrants the inference that Nunn has ever directed, authorized or consented to, or confirmed any such action on the part of these trustees, or by which Nunn is now estopped from repudiating such action if it was taken. An inference that Seward's bid was $10,000.00 and that he paid $8,500.00 thereof

by assuming the first deed of trust is, therefore, tantamount to an inference that the trustees have been guilty of a breach of trust in which Seward has participated and from which he has materially benefited, which the evidence is not sufficient to establish. The inference that Seward's bid was $10,000.00 does not accord with the recital in the deed that $8,500.00 of the $10,000.00 named in the deed as the consideration upon which it is made is due to the New York Life Insurance Company as the holder of the first deed of trust.

On the other hand the inference that the bid of Seward for the equity of redemption was $1,500.00, and that the consideration for the conveyance is stated in the deed as $10,000.00 because the deed, for some undisclosed reason extraneous the original contract, recites that Seward assumes the first deed of trust debt for $8,500.00, does accord with the recital in the deed that $8,500.00 of the consideration named therein is due the New York Life Insurance Company as the holder of the first deed of trust, and gives effect to and harmonizes all the language in the deed.

This inference is also much more in accord with what it may be inferred from the record was the value at public auction in 1924 of the equity of redemption in a property for the whole estate in which no one seems to have been willing to pay at public auction in 1927 as much as $8,500.00; for if Seward did bid $10,000.00 for the equity of redemption in the property in 1924 he was purchasing the property on the basis of the whole estate therein being then worth $18,500.00.

█ When the equity of redemption was cried out to Seward at $1,500.00 the contract of sale was complete, except for the memorandum thereafter to be made by the auctioneer, as to which no question is here raised,

and upon the payment of the $1,500.00, which the deed recites was paid, Seward was entitled to receive a deed for the property subject to the first deed of trust without assuming the payment thereof. In the execution and delivery of the deed to Seward here in evidence, the trustees do only that which they were obligated to do by the original contract of sale made at the public auction. Seward thereby acquires no benefit, right or property, however slight, which he was not entitled to receive under and in pursuance of the original contract of sale. The record contains nothing from which it can be inferred that Seward received any consideration for his recited new promise to assume other than the performance of the original contract of sale; and under the facts in this case if there was any other consideration for this new promise by Seward the burden rested upon the New York Life Insurance Company to have shown it.

 The general rule is that a new promise, without other consideration than the performance of an existing contract in accordance with its terms, is a naked promise without legal consideration therefor and unenforceable. Some of the reported cases make exceptions to this rule where the original contract is expressly or impliedly abandoned or rescinded by the parties thereto and a new contract substituted therefor; but there is nothing in the facts presented by this record which brings the recited promise of assumption by Seward within any of the exceptions which have been recognized by any of the authorities to which our attention has been directed. *Chesapeake & O. Ry. Co.* v. *Westinghouse*, 138 Va. 647, 123 S. E. 352; *McDonough* v. *Saunders*, 201 Ala. 231, 78 So. 160, 11 A. L. R. 419; *Shriner* v. *Craft*, 166 Ala. 146, 51 So. 884, 28 L. R. A. (N. S.) 450, 139 Am. St. Rep. 19; *McCaleb*

v. *Price*, 12 Ala. 753; *Carpenter* v. *Taylor*, 164 N. Y. 171, 58 N. E. 53; *Ritenour* v. *Mathews*, 42 Ind. 7; *Erb* v. *Brown*, 69 Pa. 216; *Westcott* v. *Mitchell*, 95 Me. 377, 50 Atl. 21; *Jughardt* v. *Reynolds*, 68 App. Div. 171, 74 N. Y. Supp. 152; *Foster* v. *Ross*, 33 Tex. Civ. App. 615, 77 S. W. 990; 11 L. R. A. (N. S.) note at page 796; 34 L. R. A. note at page 38; 97 Am. St. Rep. note at page 175; *Bruton* v. *Wooten*, 15 Ga. 570.

We are of opinion that the recited promise of Seward to assume the first deed of trust was a naked promise without consideration to support it, unenforceable in law, upon which neither the trustees, Nunn, nor the New York Life Insurance Company were entitled in law to recover; and the court erred in entering judgment thereon against Seward.

This conclusion makes it unnecessary to consider the other assignments of error. The judgment of the court will be reversed and final judgment here entered for the plaintiff in error, the defendant below.

*Reversed.*