Kathryn Courtney Faison

v.

Mary Lynne Hughson
and Virginia S. Hughson

January 22, 2010

Case No. CL08002623-00

BY JUDGE CHARLES N. DORSEY

This case is before the Court on the defendants' Demurrer, Plea in Bar, and Motion to Dismiss the Amended Complaint. For the reasons stated, the defendants' Demurrer and Plea in Bar as to the statute of frauds are overruled, and the defendants' Plea in Bar as to the statute of limitations and the defendants' Motion to Dismiss upon that ground will be taken under advisement.

*Facts*

In October 1991, it is alleged that Judy Parker Woody loaned $25,000 to Virginia Hughson and Mary Lynne Conner (now Mary Lynne Hughson), the defendants in this case. Am. Compl. Ex. 1. Over ten years later, on May 13, 2002, the defendants signed and had notarized a document (referred to by the plaintiff, and here solely for consistency, as "the Repayment Contract") that is titled "Personal Loan Information," and states: "Date of Loan: October 1991 in the amount of $25,000.00 payable

$300.00 per month. Estimated year of Maturity 2012." Am. Compl. ¶ 7, Ex. 1. The Repayment Contract also shows that the loan was from Woody to the defendants. Am. Compl. Ex. 1. There is no mention of any interest due on the loan or of any other terms. However, at $300 per month from the date of signing, the $25,000 loan, without interest, would be repaid in seven years or around June 2009 — earlier than the 2012 estimated year of maturity. The Repayment Contract states that Woody's residence was in North Carolina and that the defendants' residence was in Roanoke, Virginia, (Am. Compl. Ex. 1.5) where Virginia S. Hughson currently resides and where Mary Lynne Hughson currently owns real estate. Am. Compl. ¶¶ 2-3. Woody did not sign the Repayment Contract. Am. Compl. Ex. 1.

Almost one year after the defendants signed the Repayment Contract, Woody died testate on April 13, 2003, while domiciled in Orange County, North Carolina, and her husband qualified as the executor of her estate shortly thereafter on April 25, 2003. Am. Compl. ¶ 8. Although not specifically mentioned in Woody's will, which is dated December 19, 2002 (seven months after the signing of the Repayment Contract), and *which specifically devises a $68,000 promissory note to both Woody's* daughter and husband (Am. Compl. Ex. 2), Woody's husband, the executor, "was aware of the Repayment Contract and of … Woody's intent to give the Repayment Contract to her daughter, Courtney Faison," (Am. Compl. ¶ 9) who is the plaintiff in this case and is a citizen and resident of North Carolina. Am. Compl. ¶ 1. The Repayment Contract document was thus given to the plaintiff as part of the residue of Woody's estate, (Am. Compl. ¶¶ 8, 15) and was distributed to the plaintiff no later than April 5, 2005, when the estate was closed, though the Repayment Contract had not been listed in the final inventory that was filed for the estate. Am. Compl. ¶¶ 10-12, 15. The plaintiff then lost the original Repayment Contract document over a year later in 2007, but had made a copy of the document. Am. Compl. ¶ 11.

Around May 2003, the month immediately following Woody's death, while the estate was still open, the defendants began making payments to the plaintiff according to the terms of the Repayment Contract until January 2004. Am. Compl. ¶ 16. Sometime thereafter, the plaintiff contacted the defendants through an attorney, and on July 1, 2004, defendant Virginia Hughson "acknowledged the debt,"[1] and the defendants

---

[1] There is no allegation that there was a written acknowledgement that would fall under Code § 8.01-229(G).

then sent four $100 payments to the plaintiff. The payments were from an account belonging to defendant Virginia Hughson, but some of the checks were signed by defendant Mary Hughson. The fourth and last of the $100 payments received by the plaintiff was dated December 6, 2004. Am. Compl. ¶ 17. After that payment, the defendants refused to pay the plaintiff according to the Repayment Contract, despite request. Am. Compl. ¶ 18.

About five months after the defendants' last payment, a final account of the estate was submitted to the Superior Court for Orange County, North Carolina, around April 5 or 6, 2005, and the estate was closed and Woody's husband was discharged as executor. Am. Compl. ¶¶ 10-11, Ex. 3. Since the Repayment Contract had never been listed as an asset of the estate on the final inventory that had been submitted, Woody's husband reopened the estate on March 4, 2009, in order to list the Repayment Contract as an asset and to note its distribution to the plaintiff. Am. Compl. ¶ 12, Ex. 4. On that same day, Woody's husband, acting as executor, also "assigned" a copy of the Repayment Contract to the plaintiff (according to the wording of the Amended Complaint; but the executor's wording on the Repayment Contract document itself claims to "endorse this Promissory Note to [the plaintiff]"). Am. Compl. ¶ 12, Ex. 5. Also on that same day, the estate was closed and Woody's husband was again discharged as the executor. Am. Compl. ¶ 12, Ex. 4.

The plaintiff now seeks damages for a breach of contract in the amount of $22,200 "as a direct and proximate result of the defendants' failure to make payments pursuant to the terms of the Repayment Contract," plus pre-judgment and post-judgment interest and costs. Am. Compl. ¶ 22.

The plaintiff filed her Complaint on December 19, 2008, which has now been amended after this Court sustained a Demurrer to the Complaint, granting leave to amend, and took the defendants' Plea in Bar, Motion to Dismiss, and Motion to Strike Affidavit under advisement in its April 1, 2009, Order. The defendants have now filed a Demurrer, Plea in Bar, and Motion to Dismiss to the Amended Complaint, and a hearing was held on these matters on June 10, 2009.

## Analysis

"A demurrer admits the truth of all properly pleaded material facts. 'All reasonable factual inferences fairly and justly drawn from the facts alleged must be considered in aid of the pleading. However, a demurrer

does not admit the correctness of the pleader's conclusions of law'." *Dodge v. Trustees of Randolph-Macon Woman's College*, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008) (*quoting Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988)). Further, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997). Here, since the Repayment Contract document and other documents are made exhibits to the Amended Complaint, those documents are made a part of the pleadings by Rule 1:4(i). Va. Sup. Ct. R. 1:4(i) ("The mention in a pleading of an accompanying exhibit shall, of itself and without more, make such exhibit a part of the pleading.").

## A. *Note or Contract*

Terming a document a "contract" or a "note" is a conclusion of law. In their Demurrer, the defendants argue that the Repayment Contract is not a negotiable instrument or a promissory note. Dem. to Am. Compl. ¶¶ 8-9. Indeed, although the executor of Woody's estate treated the Repayment Contract as a note when he sought to "endorse this Promissory Note to [the plaintiff]," (Am. Compl. Ex. 5) the plaintiff states in her brief that "(the plaintiff's] Amended Complaint does not even allege that the Repayment Contract is a negotiable instrument." Pl.'s Mem. in Opp'n to Defs.' Dem. and Plea 6.

A "negotiable instrument" is "an unconditional promise or order to pay a fixed amount of money." Va. Code § 8.3A-104(a). A "promise" is "a written undertaking to pay money signed by the person undertaking to pay. *An acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation.*" Va. Code § 8.3A-103(a)(9) (emphasis added). It cannot be said from the words of the Repayment Contract that it is "a written undertaking to pay" back the loan. The Repayment Contract merely states; "Date of Loan: October 1991 in the amount of $25,000.00 payable $300.00 per month. Estimated year of Maturity 2012." Am. Compl. Ex. 1. Thus, the Repayment Contract only gives *information* about the loan and repayment, which is what the title of the document, "Personal Loan Information," implies is its purpose. The defendants acknowledged this information and obligation by signing and notarizing the document. The statutory definition of "promise" makes clear that such an acknowledgment without an undertaking to pay the

obligation is not a promise. Therefore, the Repayment Contract cannot be a negotiable instrument.

Neither can the Repayment Contract be a contract since there is no agreement being made. Again, the document merely acknowledges information about a loan that was made more than ten years before its signing.

## B. *Statute of Frauds*

Nevertheless, the plaintiff has sufficiently alleged facts to infer that there was at least an oral agreement by the defendants to pay back the amount loaned to them and that the right to repayment of the loan was assigned to the plaintiff, as shown by the defendants' immediately making payments to her after Woody's death and again making payments to her after having been contacted by an attorney on her behalf. The Repayment Contract document then is a memorandum of that oral agreement.

Because there is nothing alleged that qualifies as a written contract for the loan, the defendants argue that the plaintiff's action is barred by the statute of frauds under Va. Code § 11-2(9),[2] which states:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought … [u]pon any agreement or promise to lend money or extend credit in an aggregate amount of $25,000 or more. The consideration need not be set forth or expressed in the writing, and it may be proved (where a consideration is necessary) by other evidence.

However, the defendants' argument fails, because although there is no written contract and the Repayment Contract does not constitute one, the Repayment Contract is a memorandum in writing and signed by both of the defendants. "The memorandum required by Va. Code § 11-2 need not constitute or embody the contract; it need only state the essential terms of the agreement." *Troyer v. Troyer*, 231 Va. 90, 94, 341 S.E.2d 182, 185 (1986).

---

[2] Dem. to Am. Compl. ¶ 12; Defs.' Mem. in Supp. of Dem. 4.

> A memorandum, in order to make enforceable a contract within the Statute [of Frauds], may be any document or writing, formal or informal, signed by the party to be charged … which states with reasonable certainty,
>
>> (a) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and
>>
>> (b) the land, goods, or other subject-matter to which the contract relates, and
>>
>> (c) the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made.

*Horner v. Holt*, 187 Va. 715, 724, 47 S.E.2d 365, 369 (1948) (*quoting* Restatement of Contracts, vol. 1, § 207).

Here, the Repayment Contract states with reasonable certainty the essential terms of the agreement, the lender and the borrowers, the principal amount of the loan made, and how and when the loan is to be repaid. Further:

> [g]enerally speaking, the purpose with which a memorandum is prepared is immaterial, and it will suffice although it was not intended to evidence the contract or to comply with the statute [of frauds]. … However, by the clear weight of authority, the signature must be made or adopted with the declared or apparent intent of authenticating the writing relied upon as a memorandum, and not by way of mere recital or identification.

*Id.* at 725, 47 S.E.2d at 370 (*quoting* 49 Am. Jur., *Statute of Frauds*, "Signature," § 381).

It is clear from the content of the Repayment Contract document that the defendants intended to authenticate the document when they signed it and had it notarized. Therefore, the plaintiff's action is not barred by the statute of frauds.

## C. *Statute of Limitations*

The defendants further argue that, since this action is based on an oral contract, it is barred by the statute of limitations under Va. Code

§ 8.01-246, (Dem. to Am. Compl. ¶¶ 11-12, Defs.' Mem. in Supp of Dem. 4) which bars suits on oral contracts three years after the cause of action accrues. This Plea in Bar by the defendants will be taken under advisement until the terms of the oral contract are established in order to find out at what time(s) the contract was breached. Although the plaintiff claims that the defendants breached the agreement by failing to send payments beginning in January 2005, (Am. Compl. ¶ 21) the other facts alleged indicate that the defendants first breached the agreement a year earlier in January 2004 when they first stopped making the $300 monthly payments. Am. Compl. ¶ 16. However, it appears from the allegations and from the Repayment Contract document that the defendants were to repay the loan in installments. If that is so, then a new cause of action would have accrued for each installment not paid or not paid in full,[3] and the plaintiff would be able to sustain an action against the defendants for any installment payment not paid or not paid in full from three years before the date of filing her Complaint, which would be from December 19, 2005. Therefore, it cannot be said at this time that the plaintiff's entire action is barred by the statute of limitations.

## D. *Standing; Jurisdiction*

The defendants also argue that this is an action to recover personal property for Woody's estate, (Dem. to Am. Compl. ¶¶ 3-5) and thus: (1) the plaintiff, not being the personal representative of Woody, has no

---

[3] *Bizmark, Inc. v. Indus. Gas & Supply Co.*, 358 F. Supp. 2d 518, 521 (W.D. Va. 2005) ("It is settled that, upon the failure to make an installment payment, a cause of action for that installment accrues immediately and the statute of limitations begins to run." (*citing Williams v. Matthews*, 103 Va. 180, 48 S.E. 861, 862 (1904); *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif.*, 522 U.S. 192, 208, 118 S. Ct. 542, 139 L. Ed. 2d 553 (1997))); *MFS Int'l, Inc. v. Int'l Telecom, Ltd.*, 50 F. Supp. 2d 517, 524-26 (E.D. Va. 1999) (In a contract where one has an obligation to make installment payments, "a separate cause of action arises on the date each payment is missed and the statute of limitations thus runs against each installment from the time that it becomes due." (*citing MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1100-01 (3d Cir. 1995))), *Am Inn, L.P. v. SunTrust Banks, Inc.*, 28 Fed. Appx. 316, 319-21 and n. 3 (4th Cir. 2002) (*per curiam*) (holding that an installment contract is a divisible contract, and thus "for claims based on an installment contract, a cause of action accrues, and the statute of limitations begins to run, when each installment becomes due").

standing to bring this action;[4] (2) the personal representative of Woody, who would be a necessary party to such a suit, is not before the court, and the plaintiff has not pleaded facts to allege that this Court has any jurisdiction over the personal representative;[5] and (3) this Court has no jurisdiction over this matter to recover personal property for the benefit of Woody's estate because Woody's will was probated in Orange County, North Carolina. Dem. to Am. Compl. ¶ 5.

These arguments fail because this is not an action to recover personal property for Woody's estate. This is an action by an alleged assignee to enforce her right to recover the repayment of a loan, and, thus, the plaintiff, being the assignee, has standing to bring this suit under Va. Code § 8.01-13. "The assignee or beneficial owner of any bond, note, writing, or other chose in action, not negotiable may maintain thereon in his own name any action which the original obligee, payee, or contracting party might have brought. . . ." The personal representative of Woody's estate is not a necessary party because the right to repayment has been assigned to the plaintiff and, therefore, the estate no longer has any interest in it. And lastly, the Court does not need jurisdiction over Woody's will in order to hear this action to enforce a contract on behalf of the plaintiff against the defendants.

The defendants further argue that the plaintiff is not a holder in due course of the Repayment Contract and, therefore, cannot enforce the Repayment Contract since it was not properly indorsed to her by Woody's executor. Dem. to Am. Compl. ¶¶ 6-10. But this argument only applies if the Repayment Contract were a promissory note, which it is not. The defendants also argue that the estate could not have been reopened in March 2009 to convey the Repayment Contract to the plaintiff. Dem. to Am. Compl. ¶ 9; Defs.' Mem. in Supp. of Dem. 3. But since the Repayment Contract document is not the contract itself and since the right to repayment of the loan is alleged to have been assigned to the plaintiff when the estate was first opened, this also is not an issue. The plaintiff has sufficiently alleged that the right to repayment of the loan was assigned to her, noting that the defendants had made several payments to her according to the terms of the agreement immediately after Woody's death and then made more payments to her after having been contacted by her attorney about the debt.

---

[4] Dem. to Am. Compl. ¶¶ 1-3.

[5] Dem. to Am. Compl. ¶ 4.

The defendants then argue that the Repayment Contract is not enforceable because it is not definite and certain as to its terms and requirements. Dem. to Am. Compl. ¶ 11. But again, the Repayment Contract is not the contract itself, but is a memorandum of the contract, and, as discussed above, is sufficiently definite as such. "[T]he memorandum relied on need not itself constitute a contract. It is the underlying oral contract of which the memorandum is an accurate statement which is enforced." *Fanney v. Virginia Inv. & Mortg. Corp.*, 200 Va. 642, 651, 107 S.E.2d 414, 420 (1959). Further, for a contract to be enforceable, "reasonable certainty is all that is required" as long as the agreement is "sufficiently definite to enable a court to give it an exact meaning, and … obligate[s] the contracting parties to matters definitely ascertained or ascertainable." *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 7 (1957) (*quoting* 4 M.J., *Contracts*, § 27). That standard is met here from the facts alleged.

> The law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency. While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances. This is especially true where there has been partial performance.

*Reid v. Boyle*, 259 Va. 356, 367, 527 S.E.2d 137, 143 (2000) (*quoting High Knob, Inc. v. Allen*, 205 Va. 503, 507-08, 138 S.E.2d 49, 53 (1964)). And here, there has been partial performance.

The defendants also assert that the Repayment Contract is not enforceable because "[a]n agreement by one to do what he is already legally bound to do is not a good consideration *for a promise made to him*. The general rule is that a new promise without other consideration than the performance of an existing contract in accordance with its terms is a naked promise without legal consideration therefore and unenforceable." Defs.' Mem. in Supp. of Dem. 4 (*quoting* 4A M.J., *Contracts*, § 34 (footnotes omitted)) (emphasis added). Again though, the Repayment Contract document is not the contract itself, but only a memorandum of the original agreement, and thus there was no new promise made to the defendants for which the defendants' already existing obligation to repay the loan was

given as consideration. And even if that were the case, it would be the defendants who could not sustain an action for breach of the new promise due to want of consideration on their part; the plaintiff, on the other hand, would still be able bring an action against the defendants for the breach of their already existing obligation. *See Seward v. New York Life Ins. Co.,* 154 Va. 154, 167-69, 152 S.E. 346, 350 (1930); 4A M.J., *Contracts,* § 34 and n. 19 (*citing Seward,* 154 Va. 154, 152 S.E. 346). Therefore, this argument fails as well.

## *Conclusion*

For the reasons stated, the Court overrules the defendants' Demurrer and Plea in Bar as to the statute of frauds, and takes under advisement the defendants' Plea in Bar as to the statute of limitations and Motion to Dismiss on that ground until the terms of the oral contract and the date(s) of breach are established.